701 A.2d 1174

Larry D. STANLEY

v.

STATE of Maryland.

No. 1629, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Oct. 31, 1997.

46

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Devy Patterson Russell, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General, Baltimore, Davis R. Ruark, State's Atty. for Wicomico County of Salisbury, on the brief), for appellee.

Submitted before HARRELL and EYLER, JJ., and JOHN J. GARRITY, Judge (retired), Specially Assigned.

HARRELL, Judge.

Following a bench trial in the Circuit Court for Wicomico County, Larry D. Stanley was convicted of assault with intent to maim and carrying or wearing a deadly weapon. He was sentenced to respective terms of 15 years and three years, to be served consecutively. The latter sentence was suspended in favor of probation. For the reasons discussed below, we shall vacate the conviction for assault with intent to maim and reverse the conviction for carrying or wearing a deadly weapon and vacate its accompanying sentence, and remand this case for further proceedings consistent with this opinion.

## ISSUES PRESENTED

Appellant presents the following issues for our review, rephrased by us as:

I. Whether the trial court properly admitted hearsay statements of the victim as an excited utterance.

II. Whether there was sufficient evidence adduced at trial to sustain appellant's conviction for carrying or wearing a deadly weapon.

III. Whether there was sufficient evidence adduced at trial to sustain appellant's conviction for assault with intent to maim.

IV. Whether the prosecutor's remarks to a potential witness infringed upon appellant's right to compulsory process so as to warrant the granting of a new trial.

## *FACTS*

On 16 November 1995, appellant was arrested and subsequently charged with assault, battery, carrying or wearing a deadly weapon, and assault with intent to maim. Prior to appellant's trial, the victim, in writing, allegedly informed the prosecutor that appellant was not her assailant on 16 November 1995 and was not responsible for her injuries. The prosecuting attorney allegedly approached the victim in the hallway outside of the courtroom and informed her that she would be prosecuted for perjury if she failed to testify truthfully.[1]

At trial, Maryland State Trooper L. Edward White, Jr. testified that he responded to an emergency call in the Nokomis Avenue area of Salisbury, shortly before midnight on 16 November 1995. As Trooper White approached the site of the alleged emergency, he found appellant and the victim walking together on a nearby street. Both had blood on their clothes. According to Trooper White, the victim was bruised, bloodied, upset, and crying. Trooper White and another responding

---

1. The specific language used by the prosecutor in this alleged encounter is somewhat unclear. At the hearing on the motion for new trial, the victim stated that the prosecutor told her that she *would* be prosecuted for perjury if, as a witness, she failed to tell the truth. When questioned directly by the trial judge, the victim responded affirmatively when asked if the prosecuting attorney told her that she *could* be prosecuted. There is no clarification of this point in the record. For the purpose of our analysis, we assume that the prosecutor used "would", as this is the term the victim explicitly stated in her testimony.

Maryland State Trooper separated appellant and the victim, and the victim was brought to an ambulance so that she could receive medical attention. According to Trooper White, the victim remained upset and crying while in the ambulance. Trooper White testified, over the objection of defense counsel, that, while in the ambulance, the victim told him that she and appellant were involved in a fight, that appellant hit her with his fists, bit her ear, and cut her with a small penknife.

The State called the victim to testify, but she was permitted to assert her Fifth Amendment privilege against self-incrimination when asked about the events of 16 November. The defense asked no questions of the victim and called no witnesses of its own.

The State also introduced evidence that the victim was transported to Peninsula Regional Medical Center where she was treated for a laceration and bruises to the head, three 2 cm stab wounds to the chest, as well as a jagged, 5 cm laceration to her ear, which required multiple sutures to close.

## DISCUSSION

### I.

Appellant first contends that the statements the victim made in the ambulance to Trooper White should have been excluded at trial as hearsay. Hears ay, an out of court statement offered to prove the truth of the matter asserted therein, is generally inadmissible. Md. Rules 5–801(c); 5–802; *Grzboski v. Bernheimer Leader Stores,* 156 Md. 146, 147–48, 143 A. 706 (1928); *Cassidy v. State,* 74 Md.App. 1, 7–8, 536 A.2d 666 (1988). The Maryland Rules, however, contain several exceptions to this general exclusionary rule, including one for excited utterances. Md. Rule 5–803(b)(2). Under the excited utterance exception, hearsay testimony is admissible when it is

[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

*Id.* Accordingly, the trial court ruled that the statement the victim made to Trooper White was admissible at trial pursuant to the excited utterance exception to the hearsay rule.

■ This Court will not reverse a trial court's decision to admit testimony under the excited utterance exception unless the trial court abused its discretion in allowing that testimony. *Johnson v. State,* 63 Md.App. 485, 495, 492 A.2d 1343 (1985); *Moore v. State,* 26 Md.App. 556, 566, 338 A.2d 344 (1975). Because we are not persuaded that the trial court abused its discretion in admitting the hearsay statements of the victim through the testimony of Trooper White, we shall not reverse appellant's convictions on this ground. We explain.

Hearsay is considered to be generally unreliable because the opponent does not have the opportunity to cross-examine the declarant. The fact-finder, therefore, is unable to evaluate the declarant's perception, memory, sincerity, and narration. For these reasons, hearsay is generally inadmissible at trial. L. McLain, *Maryland Evidence* § 272 (1987).

■ Although the above problems still exist when a declarant makes an out-of-court statement resulting from, and relating to, an exciting or traumatic event, an excited utterance is made at a time when the stress of the event suspends the declarant's powers of reflection and fabrication. *McCormick on Evidence* § 272 (4th ed.1992). For this reason, the utterance is considered to be more reliable and, therefore, admissible. The theory of the reliability of an excited utterance is aptly explained by Professor Wigmore:

This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by

reasoned reflection, the utterance may be taken as particularly trustworthy (or at least as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.

Wigmore, Evidence § 1747, (Tillers rev.1983). In Maryland, hearsay statements are generally admissible if made while the declarant is emotionally engulfed by an exciting or traumatic event that produces a spontaneous and instinctive reaction to the situation. *Dennis v. State*, 105 Md.App. 687, 661 A.2d 175 (1995), *cert. denied*, 340 Md. 500, 667 A.2d 341 (1995); *Harmony v. State*, 88 Md.App. 306, 319, 594 A.2d 1182 (1991); *Deloso v. State*, 37 Md.App. 101, 106, 376 A.2d 873 (1977); *Smith v. State*, 6 Md.App. 581, 587, 252 A.2d 277 (1969).

 Appellant contends that the statements the victim made to Trooper White in the ambulance should have been excluded because the record does not disclose with specificity the amount of time that elapsed between the alleged attack and her statements that Trooper White testified to at trial. We do not find this argument persuasive.

This Court has previously held that, while the proximity in time between the underlying exciting or traumatic event and related utterance is an important factor in determining the admissibility of that statement, it is not determinative. *Honick v. Walden*, 10 Md.App. 714, 717, 272 A.2d 406 (1971). In the instant matter, the trial record does not disclose the specific amount of time that elapsed between the event that caused the victim's excited utterance and her related statement to Trooper White. Nonetheless, our review of the record indicates that the time lapse was not so great so as to make the utterance presumptively unreliable.

Although there is no absolute limit on the amount of time that may elapse between an utterance that will be admissible at trial and the corresponding exciting event, the utterance becomes less reliable as time passes. Our previous decisions indicate that four-and-one-half to five hours may represent the outer limit of time that may elapse between the exciting event

and an admissible utterance. *Cassidy v. State,* 74 Md.App. 1, 21, 536 A.2d 666 (1988). The record in the instant case demonstrates that the victim's hearsay statements were made within the time frame of increased trustworthiness discussed in *Cassidy* for two reasons. First, the testimony of Trooper White indicates that the actual assault on the victim probably occurred within an hour of the victim's statements to Trooper White in the ambulance. Second, the exciting event which caused the victim's statements to Trooper White continued until a few minutes before the excited utterance was made.

Trooper White testified that he had occasion to respond to the area in which he found appellant and the victim based on an emergency call he received "right before midnight." He further testified that, based on the information he received, he believed that the emergency call referred to the alleged altercation between the victim and appellant. During the intervening period between the time Trooper White received the emergency call and the time of the victim's utterance, the troopers responded to the scene, appellant and the victim were separated, and the victim received emergency medical care. After giving her statement to Trooper White, the victim was transported to Peninsula Regional Medical Center. The record specifies that the victim was registered there at 12:07 a.m. The time frame established by Trooper White's testimony demonstrates that the victim's statements in the ambulance necessarily did not occur so far after the exciting event so as to be presumptively unreliable.

The ongoing nature of the exciting event also demonstrates that the statement the victim made to Trooper White was not presumptively unreliable due to an extended passage of time. The victim's excited utterance was made after the cessation of the exciting and traumatic event, appellant's alleged accosting of the victim. Trooper White testified that, when he encountered the victim, she was bloodied, bruised, upset, crying, and required medical attention. She was also in the company of her alleged assailant. The traumatic and exciting event remained ongoing at least until the victim was separated from appellant, and perhaps continued further. When the victim

made her statements to Trooper White, she had been physically separated from appellant for only a matter of minutes. Nevertheless, the victim, while undergoing medical treatment in the ambulance, could see appellant standing just outside. Trooper White testified that the victim remained upset and crying while she received medical attention. Based on the foregoing, we agree with the trial court's conclusion that the victim's statements relating to the exciting event she had just experienced, i.e. her altercation with appellant, were made while she was still under the stress and excitement of that event.

## II.

Appellant next argues that the evidence presented at trial was insufficient to sustain his conviction for carrying and wearing a deadly weapon. On appeal, the State concedes that it failed to meet its burden of proof at trial with respect to this offense. Because we agree that the State failed to prove, beyond a reasonable doubt, that appellant was carrying or wearing a deadly weapon we shall reverse appellant's conviction on this charge.

Pursuant to Md. Ann.Code art. 27 § 36(a)(1)

[e]very person who shall wear or carry any dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind, whatsoever (*penknives without switchblade and handguns, excepted*) concealed upon or about his person ... shall be guilty of a misdemeanor, and upon conviction, shall be fined not more than $1,000 or be imprisoned in jail, or sentenced to the Maryland Department of Correction for not more than three years.

(1996 Repl.Vol.)(emphasis supplied). In order to convict an accused for carrying or wearing a deadly weapon under the statute, the State must prove, beyond a reasonable doubt, that the purported deadly weapon did not fall within the statute's penknife exception. *Anderson v. State,* 328 Md. 426, 433–34, 614 A.2d 963 (1992); *Washington v. State,* 293 Md. 465, 475,

445 A.2d 684 (1982). The record before us indicates that a knife was involved, but the State presented no evidence to demonstrate the type of knife used. Rather, the only evidence introduced at trial indicated that the knife *was* a penknife. Trooper White testified that the victim told him that appellant "had a small penknife." The State offered no evidence to contradict this testimony. Because the State failed to prove beyond a reasonable doubt that the knife used in this attack did not fall within the statutory exception for penknives, we shall reverse appellant's conviction for carrying or wearing a deadly weapon and vacate his sentence for that offense.

■■■■ Appellant further contends that, because a reversal of his conviction for carrying or wearing a deadly weapon is warranted, his sentence of fifteen years for assault with intent to maim should also be vacated and remanded to the trial court for resentencing. Because the trial judge chose to suspend his sentence for carrying or wearing a deadly weapon in favor of probation, appellant contends part of his 15 year term might have been suspended, absent the deadly weapon conviction. Neither the trial court record nor Maryland law supports appellant's contentions.

As we noted in *Wink v. State,* probation is a matter of grace, not an entitlement. 76 Md.App. 677, 682, 547 A.2d 1122 (1988), *aff'd,* 317 Md. 330, 563 A.2d 414 (1989). Simply put, appellant is not entitled to probation for one count simply because it had been granted for another charge that was later reversed.

Moreover, Maryland courts have declined to remand cases for resentencing when a general sentence had been imposed for multiple convictions, but one or more of those convictions was reversed, so long as the sentence actually imposed was within the statutory guidelines of the sustained convictions. *See Bafford v. State,* 235 Md. 41, 200 A.2d 142 (1964). *See also Felkner v. State,* 218 Md. 300, 146 A.2d 424 (1958); *Duncan v. State,* 5 Md.App. 440, 248 A.2d 176 (1968). Thus, we need not presume that appellant's improper conviction for carrying or wearing a deadly weapon somehow tainted the

sentence he received for his assault with intent to maim conviction. In this case, the trial judge assigned an appropriate sentence for each, individual, offense. Logically, a remand for resentencing is not mandated if the trial court specified sentences for each conviction, one of the convictions was overturned on appeal, and the companion sentence for the reversed conviction was vacated as well. In addition, the record is devoid of any indication that the trial judge would have granted a partial suspension of the 15 year sentence in favor of probation had appellant not also been convicted of carrying or wearing a deadly weapon. Rather, the opposite seems true: the trial judge noted that, based on appellant's prior criminal record, under the Maryland sentencing guidelines, he would have received a sentence greater than the statutory maximum. The trial judge imposed the maximum sentence allowed by law for assault with intent to maim. *See* Md. Ann.Code art. 27, § 385.

## III.

Appellant's third contention is that the evidence presented at trial was insufficient to sustain his conviction for assault with intent to maim. An appellate court will not set aside the judgment of a trial court on the evidence unless it was clearly erroneous. Md. Rule 8–131(c); *Comstock v. State,* 82 Md.App. 744, 757, 573 A.2d 117 (1990). When reviewing whether sufficient evidence was adduced at trial to sustain a conviction, this Court determines if, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986).

The statute appellant was convicted under, Md. Ann. Code art. 27 § 386, read at the time of the offense, in relevant part:

If any person shall unlawfully shoot at any person, or shall in any manner unlawfully and maliciously attempt to discharge any kind of loaded arms at any person, or shall

unlawfully and maliciously stab, cut, or wound any person, or shall assault or beat any person, with intent to maim, disfigure, or disable such person ... shall be guilty of a felony and, upon conviction is subject to imprisonment for not more than 15 years.

(1992 Repl.Vol. & Supp.1995). In order for a suspect to be convicted under section 386 for assault with intent to maim, the assault must be perpetrated with the specific intent to inflict one or more of the injuries described in section 385 of the criminal code. *Booth v. State*, 306 Md. 172, 212, 507 A.2d 1098 (1986), *vacated on other grounds*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). At the time of the offense, section 385 stated, in pertinent part:

Every person ... who shall be convicted of the crime of ... cutting or biting off the nose, ear, or lip ... of malice aforethought, with intention in so doing to mark or disfigure such person, shall be guilty of a felony and upon conviction [is] subject to imprisonment for not more than 15 years.

The existence of the specific intent to maim under section 386 can be inferred from evidence of the surrounding circumstances. *Ford v. State*, 330 Md. 682, 703, 625 A.2d 984 (1993); *Davis v. State*, 204 Md. 44, 51, 102 A.2d 816 (1954). The fact-finder can infer the requisite specific intent from the acts, conduct, and words of the defendant. *Taylor v. State*, 238 Md. 424, 432–33, 209 A.2d 595 (1965). *See also Yopps v. State*, 234 Md. 216, 221, 198 A.2d 264 (1964); *Finke v. State*, 56 Md.App. 450, 481, 468 A.2d 353 (1983). In the instant case, appellant bit the victim on her ear. The resulting wound was approximately 5 cm in length and required numerous sutures to close. Such conduct on the part of appellant furnished sufficient evidence from which the trial court, as fact-finder, could infer the requisite specific intent to maim under section 385. Although evidence of this type of bite may result in the imposition of only civil punishment when perpetrated in a Las Vegas boxing ring, the Maryland legislature has made it abundantly clear that a criminal punishment is permitted when it occurs in a Maryland venue.

60

 Appellant's final argument is that his motion for new trial should have been granted based on the allegedly inappropriate conduct of the prosecutor. The Sixth and Fourteenth Amendments of the United States Constitution guarantee an accused in a criminal trial the right to obtain witnesses in his favor. Such a right is fundamental and essential to a fair trial. *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). The State must refrain from conduct that undermines the criminal defendant's right to compulsory process. *See Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Campbell v. State,* 37 Md.App. 89, 376 A.2d 866 (1977). Prosecutorial efforts to harass, threaten, or discourage a potential witness may constitute an infringement on the constitutional rights of a criminal defendant if the defendant is deprived of the witness's potentially exculpatory testimony or the witness changes his testimony to the defendant's detriment as a result of the prosecutor's actions. *See* Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 23.3(e) (1984).

 Our analysis is unaffected in the instant case by the fact that the victim had been summoned by the prosecution to testify. A witness called by the prosecution can provide potentially exculpatory testimony and is also available to be called as a witness by the defense. This may have been quite likely in the instant case, as the victim indicated to the Assistant State's Attorney as trial neared that she might testify in a manner beneficial to appellant. A prosecutor does not have leave to threaten or intimidate a witness merely because that witness is being called by the State to testify.

 While there are no hard and fast rules that allow a court to determine exactly when a prosecutor has infringed upon a defendant's right to compulsory process, some general distinctions can be drawn. Ordinarily, when a prosecuting attorney warns a witness, in an advisory manner, of the potential legal pitfalls of committing perjury, there is no constitutional violation. *See United States v. Valdes,* 545 F.2d

957 (5th Cir.1977); *United States v. Gloria,* 494 F.2d 477 (5th Cir.1974); *People v. Eubank,* 46 Ill.2d 383, 263 N.E.2d 869 (1970); *State v. Huffman,* 65 Or.App. 594, 672 P.2d 1351 (1983). The defendant's constitutional rights may be restricted impermissibly, however, if the warnings are emphasized to the point that they become threatening or intimidating. *See generally* 22A C.J.S. *Criminal Law* § 475 (1989). When a prosecutor threatens or intimidates a witness with potential perjury charges, and the witness later refuses to testify or alters his or her testimony to the detriment of the defendant, the defendant's constitutional rights become compromised. *See United States v. Risken,* 788 F.2d 1361 (8th Cir.1986); *People v. Bryant,* 157 Cal.App.3d 582, 203 Cal.Rptr. 733 (1984); *State v. Pena,* 383 Mich. 402, 175 N.W.2d 767 (1970); *People v. Shapiro,* 50 N.Y.2d 747, 431 N.Y.S.2d 422, 409 N.E.2d 897 (1980). A court must determine whether, based on the facts as found by it, a purported interaction between a prosecutor and potential witness resulted in an infringement of a defendant's right to compulsory process.

A proper determination of whether appellant has been deprived of his right of compulsory process requires a two-part analysis. First, the trial court must make findings of fact regarding the events in question. These factual findings are accorded substantial deference. *Mayor of Rockville v. Walker,* 100 Md.App. 240, 256, 640 A.2d 751, *cert. granted,* 336 Md. 354, 648 A.2d 464 (1994); *Staley v. Staley,* 25 Md.App. 99, 110, 335 A.2d 114 (1975). In making its factual findings, the court is also accorded great deference in judging the credibility of witnesses. Md. Rule 8–131(c); *Baden v. Castle,* 28 Md.App. 64, 75, 344 A.2d 171 (1975). The court must then apply the facts to the aforementioned legal principles and determine the constitutionality of the Prosecutor's actions.

During the hearing on appellant's motion for new trial, the following exchange occurred:

[VICTIM]: [W]ell, I was told that if I get up on the stand and perjure myself, I am going to be charged with perjury and sent to jail.

THE COURT: You were told if you perjured yourself, you could be charged with perjury?

[VICTIM]: Yes.

The victim's testimony provided the only evidence concerning the alleged actions of the Assistant State's Attorney. Based on this evidence, the trial judge stated:

If you believe what [the victim] just testified to, every bit of which the prosecutor denies, all she told the witness was, if you lie, you could be prosecuted for perjury. She didn't say, if you say X, you will be prosecuted for perjury. If you say Y, you will be prosecuted for perjury. Just if you lie. When you get up, if you tell the truth, you won't. If you lie, you will. What is wrong with that?

The manner in which the trial court disposed of appellant's motion for new trial was flawed for at least two reasons. First, the trial court did not make the findings of fact necessary to consider this issue properly. In our view, the trial court made a legal, rather than factual, conclusion regarding the prosecutor's alleged actions. Instead, the trial court initially should have determined whether the incident actually occurred. To this end, the State's Attorney should have testified, under oath, regarding the events in question.[2] If, after undertaking a proper inquiry, the circuit court determines that the alleged incident never occurred, it should so find. On the other hand, if the trial court concludes the alleged exchange between the prosecutor and victim occurred, then it must ascertain, with as much specificity as possible, what actually transpired between them. The court must then apply its factual findings to the relevant legal principles.

---

**2.** The trial court noted that the prosecutor denied the victim's assertions. These denials, however, were not made while under oath. Maryland Rule 5–603 requires that a witness declare that she will testify truthfully. As we noted in *Campbell v. State*, we decline in this instance to hold that the unsworn argument of the prosecutor is sufficient to overcome the sworn testimony of appellant's witness. This is true even though the prosecutor is considered to be an officer of the court. 37 Md.App. 89, 96, 376 A.2d 866 (1977).

Second, the circuit court's colloquy with the victim was conducted with less than surgeon-like precision and contributed to the inconsistencies in the small amount of evidence that was in the record. The victim's testimony initially indicated that the Assistant State's Attorney told her that she *would* be prosecuted for perjury. The trial judge then asked the victim if she was told by the prosecutor that she *could* be prosecuted for perjury. The distinction, while subtle, may be vital in the trial court's ultimate analysis. The difference between the terms "could" and "would" conceivably transforms the character of the prosecutor's statement from advisory to threatening. The distinction between "would prosecute" and "could prosecute" is often dispositive. Indeed, courts are considerably less likely to determine that a defendant has been deprived of his constitutional right to compulsory process when the prosecutor informed a potential witness of the *possibility* of a perjury prosecution rather than by informing the witness of the *certainty* of prosecution. *See generally* Annotation, *Witness–Admonitions and Threats,* 88 A.L.R.4th 388 (1991).

The circuit court has not developed a record that properly allows us to evaluate the constitutionality of the prosecutor's actions. The only evidence introduced regarding this subject is the testimony of the victim. We are unable to make any conclusions based on her testimony, however, due to the lack of clarity concerning the language the Assistant State's Attorney used. The Prosecutor did not take the witness stand and provide sworn testimony. The utter lack of factual determinations in the record necessitates that we remand this case to the circuit court in order that appellant's motion can be properly considered.

If, on remand, the court determines that the alleged conversation between the victim and Assistant State's Attorney did not occur or, if it did, it did not prejudice appellant, the court may reinstate the conviction and sentence for assault with intent to maim. If the court, however, concludes appellant was prejudiced by the State's conduct, a new trial may be ordered.

JUDGMENT OF CONVICTION FOR CARRYING OR WEARING A DEADLY WEAPON AND ACCOMPANYING SENTENCE REVERSED; JUDGMENT OF CONVICTION FOR ASSAULT WITH INTENT TO MAIM VACATED PENDING A REHEARING OF APPELLANT'S MOTION FOR A NEW TRIAL; COSTS TO BE PAID BY WICOMICO COUNTY.