720 A.2d 323

**STATE of Maryland**

**v.**

**Larry D. STANLEY.**

**No. 2, Sept. Term, 1998.**

Court of Appeals of Maryland.

Nov. 18, 1998.

Devy Patterson Russell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief); Baltimore, for Petitioner.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CATHELL, Judge.

This case requires us to examine a criminal defendant's constitutional right to compulsory process under the Sixth and Fourteenth Amendment and the former statute relating to the offense of assault with intent to maim, disfigure, or disable.[1]

Because the State's Attorney's comment to the prosecutorial witness about the consequences of perjury was not a threat to prosecute the witness if her testimony did not satisfy the prosecutor but merely a general warning, such comment did not deprive the defendant of his constitutional right to compulsory process.[2] Furthermore, there was sufficient evidence to convict the defendant of assault with intent to maim, disfigure, or disable the victim because he stabbed her several times in the chest with a deadly weapon.

---

1. The maiming statutes, sections 384 to 386 of Article 27, were repealed by 1996 Md. Laws, Chap. 632, § 1, effective October 1, 1996, and essentially were recodified in the new assault statutes. *See* Md.Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.), Art. 27, § 12. The prior maiming statutes were in effect at the time respondent was charged in the case *sub judice*.

2. There was no indication that defendant sought process as to the witness; the witness was called by the State and the defense made no attempt to cross-examine or call the witness in its own case.

## I. Facts and Procedural History

On November 16, 1995, Larry D. Stanley, respondent and cross-petitioner, hereinafter "respondent," was arrested and subsequently charged with assault with intent to maim, assault, battery, and wearing and carrying a concealed weapon as a result of an attack on victim Tammy Jones. At trial, Trooper L. Edward White, Jr. testified that he responded to an emergency call on November 16 for an assault in progress in Salisbury, Maryland. Trooper White further testified that upon arriving at the scene of the incident, he saw respondent and Ms. Jones walking together on a nearby street. Both respondent and Ms. Jones had blood on their clothes and Ms. Jones, who was upset and crying, had blood on her upper chest and face.

Trooper White and another trooper separated respondent and Ms. Jones, taking Ms. Jones to an ambulance. She continued crying while in the ambulance, but was able to relate to Trooper White what had occurred earlier. Ms. Jones told him that while she and respondent went out for a walk, their conversation escalated into an argument. During their argument, respondent hit Ms. Jones with his fists, stabbed her in the chest with a knife, and bit her ear. Ms. Jones was taken to the Peninsula Regional Medical Center. There, she was treated for a laceration and several bruises to her head, three two-centimeter stab wounds to her chest, and a jagged five-centimeter laceration to her ear, which required multiple sutures.

Prior to respondent's trial, Ms. Jones allegedly informed the prosecuting attorney in a letter that respondent was not her assailant. During the trial, the prosecuting attorney approached Ms. Jones in a hallway outside of the courtroom and informed her that she would [3] be prosecuted for perjury if she did not testify truthfully.

---

**3.** It is unclear whether the prosecuting attorney told Ms. Jones that she *would* be prosecuted for perjury or that she *could* be prosecuted for perjury. As we shall explain *infra*, this is, in this case, a distinction without a difference.

Respondent waived his right to a jury and was tried before Judge D. William Simpson in the Circuit Court for Wicomico County on April 19, 1996. At trial, Ms. Jones was called to testify as a State's witness about the events that occurred on November 16, but she asserted her Fifth Amendment privilege against self-incrimination and refused to answer any questions. The defense did not question Ms. Jones and called no witnesses. Respondent ultimately was convicted of all four charges.

Respondent filed a motion for new trial on May 9, 1996. On August 9, 1996, after a hearing on the motion, Judge Simpson denied respondent's motion and sentenced him to incarceration for a period of fifteen years for the assault with intent to maim conviction and three years for the wearing and carrying a deadly weapon conviction, to be served consecutively. Judge Simpson then suspended the three-year sentence and placed respondent on supervised probation for thirty-six months upon his release. The assault and battery convictions merged into the assault with intent to maim conviction for sentencing purposes.

At the hearing on the motion for new trial, respondent argued, *inter alia*, that the prosecuting attorney committed misconduct during the trial by threatening to charge Ms. Jones with perjury if she did not testify truthfully. During the hearing, the following colloquy took place between the judge and the prosecuting attorney:

THE COURT: ... [D]id you chill [Ms. Jones's] testimony by threatening her? That is what [respondent is] alleging.

[STATE'S ATTORNEY]: There is no evidence of that. I put her on the witness stand. I began to ask her questions, and she began to take the [F]ifth [Amendment] as to some very innocuous questions.... We got her here [to testify].

I think there is no indication of a threat at all.

THE COURT: Are you saying that you didn't threaten her to prosecute her for perjury?

[STATE'S ATTORNEY]: No, sir.

A few minutes later, respondent's counsel called Ms. Jones as a witness and asked her about the conversation she had with the prosecuting attorney in the hallway outside the courtroom during the trial. Ms. Jones testified as follows:

[MS. JONES]: [W]ell, I was told that if I get up on the stand and perjure myself, I am going to be charged with perjury and sent to jail.

THE COURT: You were told if you perjured yourself, you could be charged with perjury?

[MS. JONES]: Yes.

After Ms. Jones stepped down from the witness stand, the following was said:

THE COURT: If we assume the truth of what she just testified to, what did the prosecutor do wrong?

[DEFENSE COUNSEL]: The prosecution threatened her with perjury.

THE COURT: If she perjured herself.

[DEFENSE COUNSEL]: Perjury, prosecution, Your Honor.

THE COURT: If you perjure yourself.

She didn't say if you say this, if you say that, or anything of that nature.

If you believe what that witness just testified to, every bit of which the prosecutor denies, all she told the witness was, if you lie, you could be prosecuted for perjury.

She didn't say, if you say X, you will be prosecuted for perjury. If you say Y, you will be prosecuted for perjury. Just if you lie.

When you get up, if you tell the truth, you won't. If you lie, you will.

What is wrong with that?

[DEFENSE COUNSEL]: Well, as a prospective defense witness,[4] Your Honor, and in receipt of the letter that that

---

4. Ms. Jones had not been summonsed as a defense witness and the record does not reflect that she was a prospective defense witness.

witness gave the State, I believe that there was another way to do this.

That in one of the cases that I gave you indicates that way, should be done by the Court, not by the prosecutor. At that point, the prosecutor should not have interfered with that potential defense witness.

That is my point, and that is what the law is.

THE COURT: Well, under the evidence presented, I do not believe that the prosecution committed prosecutorial misconduct based on the evidence that has been presented before the Court today.

The prosecution was the one calling the witness, not the defense. The prosecution was the one who secured the presence of the witness in court, not the defense, and all the prosecution is alleged to have had done is said tell the truth. If you lie, you could be prosecuted for perjury.

That's what the evidence before the Court is.

I do not believe that is sufficient to warrant a new trial to the defendant. I believe there was a sufficient basis for the excited utterance, and I do not find anything in the record with respect to the witness's assertion of her fifth amendment right that would give rise to a right to a new trial. So, I am going to deny your Motion for New Trial.

Respondent appealed to the Court of Special Appeals. That court, as relative to this appeal, held there was sufficient evidence to convict respondent of assault with intent to maim. That court then held that the prosecutor's statements as to her admonition of the witness, should have been in the form of sworn testimony, and vacated the conviction for assault with intent to maim pending a remand to the circuit court and a rehearing on the motion for new trial to determine whether the State's Attorney's conduct was inappropriate in advising Ms. Jones she would be charged with perjury if she lied. *See generally Stanley v. State,* 118 Md.App. 45, 701 A.2d 1174 (1997). The State petitioned this Court for Writ of Certiorari and respondent cross-petitioned. In its brief, the State presents the following question for review:

Did the Court of Special Appeals erroneously hold that [respondent's] convictions should be vacated pending a re-hearing of [respondent's] motion for a new trial because the record was insufficient for the trial court to determine whether the prosecutor's alleged remarks to the victim prior to trial regarding perjury charges for failing to testify truthfully deprived [respondent] of his constitutional right to compulsory process?

Respondent presents the following questions for our review:

1. Did the Court of Special Appeals err in holding that [respondent's] conviction for assault with intent to maim should be vacated pending a rehearing of [respondent's] motion for new trial because the trial court failed to obtain sworn testimony from the prosecutor?

2. Did the Court of Special Appeals err in concluding that [respondent] could be convicted of assault with intent to maim without sufficient proof of injury or intent?

With respect to petitioner's question and respondent's first question, we hold that the Court of Special Appeals erred in vacating respondent's convictions because, regardless of whether the prosecutor provided sworn testimony, her re-marks to the victim did not deprive respondent of his constitu-tional right to compulsory process. As to respondent's second question, we hold that the Court of Special Appeals did not err in holding that there was sufficient evidence to convict him of assault with intent to maim. Accordingly, we shall reverse in part and affirm in part the intermediate appellate court and uphold the judgment of the trial court as to those two issues.[5]

---

**5.** The State's original question for review, as set forth in its Petition for Writ of Certiorari and as granted by this Court, filed March 18, 1998, reads as follows:

Did the Court of Special Appeals err in holding that [respondent's] conviction for assault with intent to maim should be vacated pending a rehearing of [respondent's] motion for new trial because the trial court failed to obtain sworn testimony from the prosecutor?

Respondent argues in his brief that the question now proffered by the State in its brief "bears little resemblance to the question in the petition. In addition, the theory espoused in the petition is missing

## II. Discussion

### A. The State's Attorney's Alleged Misconduct

■ This first issue encompasses both petitioner's question and respondent's first question. Namely, we must review the effect of the prosecuting attorney's warning to Ms. Jones regarding the consequences of perjury.

In 1967, the United States Supreme Court held that a criminal defendant has the right to have compulsory process for obtaining witnesses in his favor under the Sixth Amendment, as applied through the Fourteenth Amendment:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the

---

from the brief and *Gray* [*v. State*, 317 Md. 250, 562 A.2d 1278 (1989)] is *not cited* in the brief. Under these circumstances, ... it would be appropriate for this Court to dismiss the petition as improvidently granted." The State, in its reply brief, asserts that it argued in its petition that the Court of Special Appeals erred by vacating respondent's conviction because

> the prosecutor should not have been required to take the witness stand and provide sworn testimony since "the information that the trial court had before it at the motions hearing was adequate enough to enable it to make the necessary factual findings as to whether the prosecutor had, as [respondent] alleged, engaged in prosecutorial misconduct."

The same issue, the State argues, is encompassed by the question presented in its brief, but "explored in greater detail." The arguments presented in the State's brief simply present different alternatives upon which we may base our decision.

. We disagree with respondent that the scope of the State's brief exceeds the question for which we granted certiorari. As we shall explain, the Court of Special Appeals did err as the prosecutor was not required to be a sworn witness at the hearing on the motion for new trial. This is because the prosecutor's comment, assuming the truth of Ms. Jones's version of the comment, was not a constitutional violation. Accordingly, it was irrelevant whether the trial court obtained sworn testimony from the prosecutor. This issue does not exceed the scope of the question granted review by this Court and, therefore, we shall address it.

purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).

In *Webb v. Texas,* 409 U.S. 95, 98, 93 S.Ct. 351, 353–53, 34 L.Ed.2d 330 (1972), the Court revisited that issue and held that a trial court judge deprived a criminal defendant of his right to compulsory process when the judge threatened a defense witness with prosecution for perjury, which effectively prevented the witness from testifying. At the trial, the defense called only one witness. On his own initiative, the trial judge said to the witness:

"Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you. If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [*sic* ] is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking."

*Id.* at 95–96, 93 S.Ct. at 352, 34 L.Ed.2d 330. The witness thereafter refused to testify and was excused.

The trial court's error, the Supreme Court said, was to gratuitously single out this particular witness and admonish him, at an inordinately great length, about the dangers of perjury. Instead of just "warning the witness of his right to refuse to testify and of the necessity to tell the truth," *id.* at 97, 93 S.Ct. at 353, 34 L.Ed.2d 330, the judge implied that he expected the witness to lie and, in unnecessarily strong terms, threatened the witness with a perjury conviction. These admonishments likely exerted significant duress upon the witness, precluding him from freely and voluntarily choosing whether to testify. Such judicial threats, the Court held, deprived the defendant of his right to due process. *Id.* at 98, 93 S.Ct. at 353, 34 L.Ed.2d 330.

This Court applied *Webb* in *Marshall v. State,* 291 Md. 205, 434 A.2d 555 (1981). We held that the trial court abused its discretion by improperly admonishing the defendant about perjury while the defendant was testifying. *Id.* at 214, 434 A.2d at 560. In that case, the trial judge said to the defendant after he was attempting to testify differently than he had in an earlier stage of his trial:

> "Now, Mr. Marshall, you are under oath. If you fail to tell the truth, you can be charged with perjury. You took the witness stand in front of me the 13th of November.
>
> . . . .
>
> Now, you are trying now to testify differently from what you said on November the 13th, and I'll issue a bench warrant charging you with perjury if you persist."

*Id.* at 209, 434 A.2d at 558. Ultimately, the defendant testified as he had originally on November 13.

Reversing the Court of Special Appeals and the trial court, we held that the judge had committed a *Webb*-type violation because the admonition caused the defendant to testify in a certain way for fear of suffering some severe consequence. We stated: "[W]hile we agree with the court below that a judge presiding over a jury trial has the right to interrogate witnesses in an effort to clarify the issues, we stress that he

should exercise this right sparingly." *Id.* at 213, 434 A.2d at 560.

Several other courts addressing the issue of the effect of a court's admonition of the penalties of perjury have found no such violation. For instance, in *United States v. Blackwell,* 694 F.2d 1325 (D.C.Cir.1982), the trial judge and the prosecutor both warned the testifying witness of the penalties of perjury, but did so only once. The judge questioned the witness under oath as follows:

[T]here are always actions of perjury meaning that if you lie under oath that you can be sent away on a new charge.

Do you understand that?

THE WITNESS: Yes.

THE COURT: So it is important for everybody to tell the truth. I just want you to understand what the situation is. All right?

THE WITNESS: Thank you.

THE COURT: Do you still wish to take the stand and testify?

THE WITNESS: Yes.

*Id.* at 1334.

Holding that the judge's admonishments and the prosecutor's similar comments did not amount to a constitutional violation, the Court of Appeals for the District of Columbia stated that "[i]t is not improper *per se* for a trial court judge or prosecuting attorney to advise prospective witnesses of the penalties for testifying falsely. But warnings concerning the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witness into refusing to testify." *Id.* (citations omitted). The trial judge and the prosecutor, the court reasoned, maintained acceptable limits in their warnings to the witness, and fulfilled their duties to warn a potential perjurer about the ramifications of perjury. Accordingly, their comments caused no constitutional violation. *Id.* at 1336. *See also United States v. Smith,* 997 F.2d 674, 680 (10th Cir.) (concluding the judge's comments to witness

about maximum sentence for perjury were not threatening or coercive and under the circumstances of that case, did not amount to a *Webb* violation), *cert. denied,* 510 U.S. 937, 114 S.Ct. 357, 126 L.Ed.2d 321 (1993).

Likewise, comments by prosecutors as to the implications of perjury may, or may not, be a violation of the principles set forth in *Webb. See People v. Hill,* 17 Cal.4th 800, 72 Cal.Rptr.2d 656, 675, 952 P.2d 673, 692 (1998) (noting that under the circumstances of that case, prosecutor's threat of perjury conviction to defense witness constituted prosecutorial misconduct); *Davis v. State,* 831 S.W.2d 426, 437 (Tex.App. 1992, pet.ref'd) ("Under certain circumstances, a judge's or prosecutor's threats or intimidation that dissuade a witness from testifying or persuade a witness to change their testimony may infringe a defendant's due process rights."). Threatening comments must rise to the level of " 'a threat over and above what the record indicate[s] was timely, necessary, and appropriate.' " *United States v. Jackson,* 935 F.2d 832, 847 (7th Cir.1991) (alteration in original) (quoting *United States v. Simmons,* 670 F.2d 365, 369 (D.C.Cir.1982), *cert. denied,* 464 U.S. 835, 104 S.Ct. 121, 78 L.Ed.2d 119 (1983)). A constitutional violation arises not when the prosecutor merely informs or advises the witness about the possibility of perjury, but instead when he or she "by deliberate and badgering threats design[s] to quash significant testimony." *United States v. Davis,* 974 F.2d 182, 187 (D.C.Cir.1992), *cert. denied,* 507 U.S. 979, 113 S.Ct. 1434, 122 L.Ed.2d 801 (1993); *see also State v. Melvin,* 326 N.C. 173, 187, 388 S.E.2d 72, 79 (1990) ("[T]he constitutionality of a prosecutor's conduct is determined by the attendant circumstances, and not all prosecutorial threats of perjury proceedings constitute due process violations."). In many circumstances, a testifying witness, particularly an unrepresented witness, possibly should be warned about the possibility of a perjury charge. *Davis,* 974 F.2d at 187; *see also Smith,* 997 F.2d at 680; *State v. Baca,* 124 N.M. 55, 62, 946 P.2d 1066, 1073 (N.M.1997). Unless the prosecutor specifically threatens, intimidates, or coerces the witness, no constitutional violation ordinarily will be found. *See, e.g., People v.*

*Mancilla,* 250 Ill.App.3d 353, 360, 189 Ill.Dec. 846, 620 N.E.2d 1163, 1168 (stating that prosecutor's threats to witness that she could be prosecuted criminally for perjury and deported because of her immigration status were meant to be coercive rather than helpful, and thus were improper), *cert. denied,* 153 Ill.2d 566, 191 Ill.Dec. 625, 624 N.E.2d 813 (1993); *State v. Halley,* 93 Ohio App.3d 71, 79, 637 N.E.2d 937, 942 (1994) (noting that because prosecutor reminded witness of penalty of perjury while on the stand testifying and in front of the jury and because remarks were meant to be intimidating, warnings were improper). *But see State v. Drewel,* 835 S.W.2d 494, 497 (Mo.Ct.App.1992) (holding that prosecutor's warning to defense witness that if she testified untruthfully she could be charged with perjury was not threatening and therefore not reversible error); *Baca,* 124 N.M. at 62, 946 P.2d at 1073 (holding that where prosecutor's warning about potential perjury charges was not threatening or coercive, the remark was not improper).[6] Finally, the determination of whether prose-

---

**6.** Maryland courts have yet to address the specific issue of whether general prosecutorial admonishments of witnesses for perjury violate a criminal defendant's constitutional rights. The Court of Special Appeals, however, reviewed a related problem in *Campbell v. State,* 37 Md.App. 89, 376 A.2d 866 (1977). In that case, a State's Attorney had requested that the case of a potential co-defendant of Campbell's, David Byrd, be placed on the inactive docket. Mr. Byrd later agreed to testify on the defendant's behalf. On the day of the defendant's trial and immediately before defendant's case in which Mr. Byrd would have testified was called, the State's Attorney prosecuting the case moved to reopen the case against Mr. Byrd. Although the prosecutor feigned coincidence in reopening the cases on the very day Mr. Byrd was to testify on the defendant's behalf and presumably to his own detriment, it later was revealed that the State's Attorney had inferred to Mr. Byrd's attorney earlier that if Mr. Byrd did not testify in the matter, that "would have a lot to do with" whether the State would prosecute Mr. Byrd. Mr. Byrd ultimately refused to testify for the defendant. The court held the prosecutor's actions improper and remanded the case for a new trial under the principles set forth in *Washington v. Texas* and *Webb. Id.* at 98–99, 101, 376 A.2d at 871–72.

Interestingly, the Court of Special Appeals in that case declined to take into consideration the unsworn argument of the prosecutor made during the trial: "While we are fully cognizant of the position of a prosecutor as an officer of the court as well as of the State, we decline to hold that his unsworn argument or the inference from his questions

cutorial admonitions violated a defendant's due process will depend on the facts in each case. *Melvin,* 326 N.C. at 187, 388 S.E.2d at 79.

■ It is apparent that prosecutors can and sometimes should warn witnesses of the consequences of perjury. These warnings, however, should be general in nature and must not directly intimidate or coerce a witness into silence. No intimidation or coercion occurred in the case before us; the admonition was general in nature. The witness testified that the State's Attorney told her she would be prosecuted for perjury if she did not tell the truth. Some confusion exists because the witness then agreed with the trial judge when he characterized the prosecutor's statement as "could be prosecuted for perjury." That characterization, however, makes little difference. Generally, a party may warn its witness of the ramifications of perjury. Ultimately, whether the State's Attorney in this case used the word "could" or "would," the statement made to Ms. Jones prior to trial was nothing more than a general warning and not a coercive attempt to prevent her from testifying. Such a warning, therefore, was not a *Webb*-type admonition and did not violate respondent's right to compulsory process.[7]

■ As we have indicated, respondent argues vigorously about the State's Attorney not being a sworn witness when the trial judge asked her if she had threatened the witness with perjury charges. Citing to Maryland Rule 5–603,[8] which

---

on cross-examination were sufficient to overcome the sworn testimony of appellant's witnesses." *Id.* at 96, 376 A.2d at 870. Although the prosecutor's remarks in the case *sub judice* were not made under oath, as we shall explain, that makes little difference to the outcome of this case.

7. Although not independently significant, we note again that Ms. Jones was a State witness, not a witness for the defense. Thus, the State was advising Ms. Jones to testify truthfully, not attempting to silence her.

8. Rule 5–603 provides:

Before testifying, a witness shall be required to declare that the witness will testify truthfully. The declaration shall be by oath or

requires all witnesses to be sworn prior to testifying, respondent asserts the trial court erred in allowing the prosecutor to engage in the testimonial conversation without first being sworn. The record indicates that the State's Attorney was not sworn before the judge asked her whether she threatened to prosecute Ms. Jones with perjury. Moreover, there was some degree of uncertainty at the motion for new trial hearing about whether the prosecutor used the word "would" or "could." The trial judge, however, concluded at the hearing that, assuming the truth of Ms. Jones's testimony, the prosecutor did not engage in misconduct. As we have stated, Ms. Jones said at the hearing: "I was told that if I get up on the stand and perjure myself, I am going to be charged with perjury and sent to jail." We agree with the trial court that, assuming the State's Attorney made the comment as testified to by Ms. Jones, that comment did not violate respondent's constitutional rights because the statement was merely a general warning of the consequences of lying while under oath, not a threat made to silence or coerce the witness or cause her to produce specific testimony. Thus, whether the State's Attorney's comments in open court were under oath was irrelevant to the matter because the trial court accepted as true the witness's account of her conversation with the State's Attorney. Accordingly, the trial court did not err in denying respondent's motion for new trial based on the perjury warning.[9]

### B. Sufficiency of the Evidence for the Assault with Intent to Maim Conviction

■ The standard for our review of the sufficiency of the evidence is "whether after viewing the evidence in the light

affirmation administered either in the form specified by Rule 1–303 or, in special circumstances, in some other form of oath or affirmation calculated to impress upon the witness the duty to tell the truth.

9. We are unable to find in the record an objection by respondent to the court's solicitation of the "unsworn testimony" from the State's Attorney at the hearing. We decline to hold the issue is waived, however, as the State has proffered no such argument before this Court nor to the Court of Special Appeals.

most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056, 1057 (1986) (citing *Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560 (1979)); *see also State v. Albrecht,* 336 Md. 475, 478–79, 649 A.2d 336, 337 (1994); *Dawson v. State,* 329 Md. 275, 281, 619 A.2d 111, 114 (1993); *McMillian v. State,* 325 Md. 272, 289, 600 A.2d 430, 439 (1992); *Wilson v. State,* 319 Md. 530, 535, 573 A.2d 831, 833 (1990). Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder. *See Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037, 1041 (1991). Thus, our concern is not whether the verdict below was in accord with the weight of the evidence, but rather, whether there was sufficient evidence at trial "that either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *Albrecht,* 336 Md. at 479, 649 A.2d at 337.

Respondent was charged with assault with intent to maim. Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 386 (Repealed). At the time of the offense in this case, the statute provided in pertinent part:

If any person shall unlawfully shoot at any person, or shall in any manner unlawfully and maliciously attempt to discharge any kind of loaded arms at any person, or shall unlawfully and maliciously stab, cut or wound any person, or shall assault or beat any person, with intent to maim, disfigure or disable such person ..., such offender shall be guilty of a felony and, upon conviction are subject to imprisonment for not more than 15 years.

Maiming was not defined within section 386. Rather, the definition appeared in section 385 of Article 27:

Every person, his aiders, abettors and counsellors, who shall be convicted of the crime of cutting out or disabling the tongue, putting out an eye, slitting the nose, cutting or biting off the nose, ear or lip, or cutting or biting off or

disabling any limb or member of any person, of malice aforethought, with intention in so doing to mark or disfigure such person, shall be guilty of a felony and upon conviction are subject to imprisonment for not more than 15 years.

Assault with intent to maim is a specific intent crime. In that regard, a conviction cannot lie unless the perpetrator had the specific intent "to inflict one or more of the injuries described in [section] 385." *Booth v. State,* 306 Md. 172, 212, 507 A.2d 1098, 1118 (1986), *vacated on other grounds,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); *see also Richmond v. State,* 330 Md. 223, 230, 623 A.2d 630, 633 (1993). Additionally, the injury must be permanent in nature. *Ford v. State,* 330 Md. 682, 702, 625 A.2d 984, 993 (1993); *Hammond v. State,* 322 Md. 451, 457–59, 588 A.2d 345, 347–48 (1991).

Respondent's second question in his cross-petition argues that the prosecution was required to prove that respondent had the specific intent to "bit[e] *off* the ... ear" of Ms. Jones. Our analysis, however, does not begin or end with the biting issue. Count One of the Criminal Information filed in the circuit court alleged that respondent "did unlawfully and maliciously *cut* ... Tammy Tirrell Jones, with intent to maim, disfigure or disable...." (Emphasis added.) The trial judge stated when addressing respondent's motion for acquittal at the close of the State's case:

> Well, there was evidence that the victim ... stated that the defendant bit her and had a knife, and she had wounds that are evidenced by the hospital records, stab wounds to the chest, an ear edema. [The evidence] indicates that she was ... knifed.
>
> I certainly think there is legally sufficient evidence....

The defense presented no case at trial. It then renewed its argument that the evidence on the assault with intent to maim charge was not sufficient. The trial judge responded: "I don't have any doubt that there was a knife involved. The Court believes beyond a reasonable doubt that [a knife] was used and that was an intent to maim."

The Court of Special Appeals held below that there was sufficient evidence presented from which the trial court could have found respondent guilty of assault with intent to maim. Respondent argues the intermediate appellate court erred in this regard because "the mere fact that Ms. Jones was bitten on the ear is not sufficient to establish an intent to maim," which, under the statute, essentially means intent to bite her ear *off*. Respondent, however, was convicted based upon the knifing. We believe there was sufficient evidence to convict respondent for assault with intent to maim for his attack on Ms. Jones with the knife, which resulted in three two-centimeter stab wounds to her chest.[10]

 As we have stated, the prosecution was required to prove that respondent assaulted Ms. Jones with the specific intent to maim, disfigure, or disable her. This Court and the Court of Special Appeals have said on many occasions that this intent may be inferred from the surrounding circumstances. *Ford,* 330 Md. at 702–03, 625 A.2d at 994.[11] More specific to this case, "the intent necessary for a conviction under [section]

---

**10.** The Court of Special Appeals reversed respondent's conviction for carrying or wearing a deadly weapon "[b]ecause the State failed to prove beyond a reasonable doubt that the knife used in this attack did not fall within the statutory exception for penknives." *Stanley,* 118 Md.App. at 57, 701 A.2d at 1180. This does not affect our opinion in this case. Regardless of whether the knife respondent used to assault Ms. Jones was legally possessed, respondent still "unlawfully and maliciously stab[bed], cut or wound[ed]" Ms. Jones under circumstances in which an intent to disfigure can be inferred. When a person stabs another, it is reasonable to infer that permanent disablement or disfigurement is intended. *See infra.*

**11.** In *Ford,* the defendant and three companions threw large landscaping rocks at oncoming cars for over thirty minutes. At least fifteen cars were struck, resulting in numerous injuries, both serious and minor. This Court took particular note, with regard to the defendant's assault with intent to disable charges, that two victims had been struck by the rocks, and two others had been cut by windshield glass, which had been shattered by the rocks. *Id.* at 704, 625 A.2d at 994. We reasoned that these and other resulting injuries were the "natural and probable consequences of hurling a large rock through the windshield of a fast moving vehicle," and, therefore, the jury could have inferred that the defendant possessed the necessary intent to disable permanently his victims as required by section 386. *Id.* at 704–05, 625 A.2d at 995.

386 may be inferred from evidence of an attack with a deadly weapon." *Id.* at 703, 625 A.2d at 994 (citing *Marks v. State*, 230 Md. 108, 112–13, 185 A.2d 909, 912 (1962), *cert. denied*, 373 U.S. 918, 83 S.Ct. 1308, 10 L.Ed.2d 417 (1963)). What is more, a fact finder is permitted to infer from the act of stabbing "that the stabber intended permanently to maim, disfigure, or disable his victim." *Williams v. State*, 100 Md.App. 468, 472, 641 A.2d 990, 992 (1994). *See also Jenkins v. State*, 59 Md.App. 612, 617, 477 A.2d 791, 793 (1984) ("[A]n intent to maim, disfigure, or disable under [section] 386 may be established by showing an intent to do grievous bodily harm" such as pointing and shooting a gun at another), *rev'd in part on other grounds*, 307 Md. 501, 515 A.2d 465 (1986); *Hoes v. State*, 35 Md.App. 61, 74, 368 A.2d 1080, 1088 (1977) (upholding assault with intent to maim conviction because "the pointing of a gun toward another human and discharging it in random fashion is sufficient to support inferences of intent to do grievous bodily harm."); *cf. Davis v. State*, 204 Md. 44, 51, 102 A.2d 816, 819–20 (1954) (noting as to assault with intent to murder that "[t]he deliberate selection and use of a deadly weapon directed at a vital part of the body is a circumstance which indicates a design to kill, since in the absence of evidence to the contrary, the law presumes that one intends the natural and probable consequences of his act.").

Returning to the case at hand, when the defense moved for judgment of acquittal, the judge stated in discussing this issue:

I don't have any doubt that there was a knife involved.

The Court believes beyond a reasonable doubt that one was used and that was an intent to maim, and that the defendant is guilty of all the charges based on the statement at the time of the victim and the evidence submitted by the hospital records as to the statements as to the cause of the injuries and the injuries that were actually found, and the Court will enter verdicts of guilt.

The judge found that respondent, in assaulting Ms. Jones with a knife, was guilty of the charges against him, *i.e.*, that he intended to maim, disfigure, or disable her permanently. The

evidence of the several puncture wounds from the knife in her chest and the use of a knife in general were sufficient to sustain that conviction. The victim's injuries correlate directly to an intent to maim on respondent's part because first, an intent to maim Ms. Jones can by inferred from respondent's use of the knife, a dangerous weapon. Second, by stabbing the victim in her chest, the general area of the heart and lungs, respondent obviously intended to cause serious physical injury: disablement or disfigurement. Thus, the evidence was sufficient to establish that petitioner had the intent to maim, disable or disfigure Ms. Jones permanently. Accordingly, we shall affirm the Court of Special Appeals as to the sufficiency of the evidence issue.

### III. Conclusion

The State's Attorney, in her comment to the State's witness about the penalties of perjury, did not deprive respondent of his right to compulsory process under the Sixth and Fourteenth Amendments. The comment was a general admonition, not a threat, and did not improperly coerce or badger the witness. Moreover, the trial court presumed as truthful what Ms. Jones testified to at the hearing on the new trial. Even under Ms. Jones's version, the State's Attorney's comment was not improper. Finally, there was sufficient evidence to convict respondent, as the trial court did, of the charge of assault with intent to maim, disfigure, or disable for stabbing the victim with a knife in her chest. Accordingly, we shall reverse the Court of Special Appeals as to the motion for new trial and vacate that court's vacation of the trial court's denial of respondent's motion for a new trial. We affirm the Court of Special Appeals as to respondent's conviction for assault with intent to maim.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND VACATED IN PART; THAT PART OF THE COURT OF SPECIAL APPEALS' JUDGMENT RELATING TO THE CONVICTION FOR ASSAULT WITH INTENT TO MAIM IS VACATED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS**

WITH INSTRUCTIONS TO AFFIRM THE TRIAL COURT JUDGMENT WITH RESPECT TO THE CONVICTION FOR ASSAULT WITH INTENT TO MAIM. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.

Dissenting opinion by RAKER, J., in which ELDRIDGE, J., joins.

RAKER, Judge, dissenting:

I would affirm the judgment of the Court of Special Appeals. *Stanley v. State,* 118 Md.App. 45, 701 A.2d 1174 (1997). I believe that under the circumstances of this case, the prosecutor should have been required to testify at the evidentiary hearing, thereby affording Respondent the opportunity to cross-examine the prosecutor.

The majority holds that the Court of Special Appeals erred in vacating Respondent's convictions because, regardless of whether the prosecutor provided sworn testimony, her remarks to the victim did not deprive Respondent of his constitutional right to compulsory process. Maj. op. at 741. The majority explains that this is because the prosecutor's comment, assuming the truth of Ms. Jones's version of the comment, was not a constitutional violation, and thus, it was irrelevant whether the trial court obtained sworn testimony from the prosecutor. Maj. op. at 741 n. 5.

The intermediate appellate court noted correctly that

[t]he circuit court has not developed a record that properly allows us to evaluate the constitutionality of the prosecutor's actions. The only evidence introduced regarding this subject is the testimony of the victim. We are unable to make any conclusions based on her testimony, however, due to the lack of clarity concerning the language the Assistant State's Attorney used. The Prosecutor did not take the witness stand and provide sworn testimony. The utter lack of factual determinations in the record necessitates that we remand this case to the circuit court in order that appellant's motion can be properly considered.

*Stanley,* 118 Md.App. at 63, 701 A.2d at 1183. It is not so much the lack of the oath that troubles me; it is the lack of the opportunity to cross-examine the prosecutor and to explore with her exactly what she told the witness. Perhaps the prosecutor told the witness some things that the witness forgot and thus failed to mention when questioned by the court. Simply because the trial court accepted as true the witness's account of her conversation with the prosecutor does not end the inquiry. As Judge Harrell noted, writing for the court, "the circuit court's colloquy with the victim was conducted with less than surgeon-like precision and contributed to the inconsistencies in the small amount of evidence that was in the record." *Id.,* 118 Md.App. at 63, 701 A.2d at 1183. The defense should have been permitted to question the prosecutor to determine whether she said anything to intimidate or threaten the witness that may have caused her to refuse to testify. The defense should not have been required to accept the prosecutor's denial.

The Court of Special Appeals reached the right result in this case in ruling that the case should be remanded and

[i]f, on remand, the court determines that the alleged conversation between the victim and Assistant State's Attorney did not occur or, if it did, it did not prejudice appellant, the court may reinstate the conviction and sentence for assault with intent to main. If the court, however, concludes appellant was prejudiced by the State's conduct, a new trial may be ordered.

*Id.,* 118 Md.App. at 63, 701 A.2d at 1183. For the reasons stated above and by the Court of Special Appeals, Respondent was denied his right of confrontation. Accordingly, I respectfully dissent.

Judge ELDRIDGE has authorized me to state that he joins in the views expressed herein.