WISMER *v.* MARX.

1. AUTOMOBILES—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT—SLEEP—PREMONITORY SYMPTOMS.

Motorist who is overcome by sleep is not guilty of gross negligence or wilful and wanton misconduct under the guest passenger act unless he continues to drive in reckless disregard of premonitory symptoms (1 Comp. Laws 1929, § 4648).

2. SAME—SLEEP—DISCONTINUANCE OF DRIVING—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT.

Guest passenger on motor trip across State which commenced at 2 o'clock in the morning who averted one accident by arousing driver who had fallen asleep but acquiesced in his driving there-

after when he stated that he could not then go to sleep and was able to drive but that if he got sleepy he would park and take a nap *held,* as a matter of law not to have made out a case of gross negligence ·or wilful and wanton misconduct against driver and owner under the guest passenger act for injuries occurring· when driver again fell asleep and lost control of car which ran into a telephone pole, where there was no evidence driver had been drinking, had overtaxed himself, or refused to let plaintiff drive car as she offered to do or to discontinue his driving, or denied her right to leave the car (1 Comp. Laws 1929, § 4648).

Appeal from Wayne; Dehnke (Herman), J., presiding. Submitted April 13, 1939. (Docket No. 92, Calendar No. 40,447.) Decided June 5, 1939.

Case by Minnie B. Wismer against George Marx and Roy Marx for personal injuries sustained when the automobile in which she was riding collided with a telephone pole. Verdict and judgment for plaintiff. Defendants appeal. Reversed without a new trial.

*Cozadd & Shangle,* for plaintiff.

*Stewart A. Ricard,* for defendants.

WIEST, J. This is an action under the guest act, 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446), to recover damages for personal injuries plaintiff claims she sustained by reason of the gross negligence or wilful and wanton misconduct of defendant Roy Marx, in operating an automobile owned by his father, defendant George Marx. Roy Marx volunteered to take plaintiff from Detroit to Benton Harbor, and the start on the trip was made about 2 o'clock the morning of July 17, 1937, and, when a few miles beyond the village of Wayne, the automobile left the roadway and collided with a telephone pole and plaintiff received injuries.

Plaintiff claims that Roy Marx, who was driving, was asleep, his consequent want of control of the car caused the accident, and that a short time before he had fallen asleep at the wheel and an accident then was only averted by her arousing him, and thereafter his continuing to drive, with such previous knowledge of drowsiness, was in reckless disregard of consequences and constituted gross negligence or wilful and wanton misconduct entitling her to have recovery under the guest act.

There was no evidence that the driver had been drinking or had overtaxed himself. He had, as usual, worked the day before from 3 o'clock in the afternoon until 11 at night.

Plaintiff testified that on the first occasion when he fell asleep she shouted and he brought the car back on the highway and said he had fallen asleep; that she suggested that if he was sleepy to let her drive or else park the car and take a nap and they could wait until he was rested, but "He said he was all right, that he could tend to his driving then," and "if he got sleepy he would park the car and take a nap," and she thought he would certainly do that; that she had driven cars for 18 years and at the time of the accident the speed of the car was about 35 or 40 miles per hour.

Plaintiff also testified:

"*Q.* So when you discovered that he did go to sleep, you asked him if he could drive, didn't you?

"*A.* I told him that if he was sleepy to let me drive the car.

"*Q.* And he said he wasn't sleepy?

"*A.* Yes, he said he was not—he was awake after the accident, naturally that woke him up.

"*Q.* He said he was awake now and he couldn't go to sleep, is that right?

"*A.* Yes, if he got sleepy he would stop and park.

"*Q.* And you believed him, didn't you?

"*A.* Yes, sir.

"*Q.*  And when he said he was awake and well able to drive, you have no reason to disbelieve that, have you?

"*A.*  No, I didn't have no reason.

"*Q.*  So you sat along with him and he drove along further?

"*A.*  Yes, sir.

"*Q.*  How far did he drive it before the accident happened?

"*A.*  How far what?

"*Q.*  Beyond the first time when you say you aroused him?

"*A.*  Between three and four miles."

At the close of plaintiff's proofs the defendants moved for a directed verdict of not guilty. The court denied the motion, and defendants put in their proofs, and plaintiff had verdict and judgment for $703.60.

Defendants appeal on the ground that plaintiff's proofs did not establish gross negligence or wilful and wanton misconduct on the part of the driver and, therefore, the court was in error in denying their motion for a directed verdict.

We have held that the driver of an automobile, overcome by sleep, is not guilty of gross negligence or wilful and wanton misconduct unless he continues to drive in reckless disregard of premonitory symptoms. *Boos* v. *Sauer,* 266 Mich. 230; *Perkins* v. *Roberts,* 272 Mich. 545.

Under the mentioned testimony of plaintiff, was the first drowsiness of the driver such a warning as to constitute further driving by him without rest an act disclosing a wilful or wanton disregard of consequences?

Judging from the driver's expressed state of mind relative to his ability to continue to drive and plaintiff's acquiescence therein it cannot be found that his further driving constituted a conscious and reckless disregard of consequences to plaintiff. The case

stands apart from instances where danger was recognized by a guest, called to the attention of the driver, protest made, request for discontinuance or right to leave the vehicle refused, and the anticipated result by reason of the continued recklessness of the driver has been realized, and a wilful and wanton disregard of consequences can be found.

Plaintiff made no case under the guest act, and the court was in error in not so holding at the close of plaintiff's proofs.

The judgment is reversed without a new trial, and with costs to defendants.

BUTZEL, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.