WHITE AND WHITE *v.* KING

[No. 245, September Term, 1967.]

*Decided May 30, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and FINAN, JJ.

*Joseph F. McBride,* with whom were *Bill L. Yoho, Robert S. Hoyert, Roy W. Hooten* and *Hoyert, Yoho & Hooten* on the brief, for appellants.

*Jerrold V. Powers,* with whom were *Sasscer, Clagett, Powers & Channing* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

At about 2:00 P.M. on 5 August 1960 the Whites and the Kings left Hyattsville in a car belonging to King's employer. They were bound for Grand Rapids, Michigan, to attend the funeral of a relative. Twelve hours later, while King was driving, the car ran off of the hard surface of a Michigan highway onto the median strip. In the ensuing crash the Whites were injured. They claimed King's stubborn refusal of relief at the wheel, despite his drowsiness, was gross negligence under the Michigan guest statute. King stoutly denied he had any reason

to be concerned about his condition and that when he did "doze off" it was without any "forewarning whatsoever."

The first time this case was tried the court, at the close of the plaintiff's case, directed a verdict in favor of King. We reversed, holding the Michigan statute was controlling and that there was enough evidence to go to the jury on the issue of gross negligence. *White v. King,* 244 Md. 348, 223 A. 2d 763 (1966). At the conclusion of the second trial the jury brought in a verdict in favor of King. The appellants (White) now contend it was error for the trial judge to admit certain evidence and thereafter to allow improper argument thereon by King's counsel. We do not agree. The parties are in accord that the evidence as summarized by Judge Oppenheimer, for the Court, in *White v. King, supra,* is essentially the same as the evidence produced at the second trial except, of course, for the addition of King's testimony. We shall not repeat Judge Oppenheimer's résumé of the evidence.

What follows is an excerpt from the direct examination of King:

> "Q. Can you state, Mr. King, whether or not you had any intent to do anything dangerous in the operation of the car?
> "Mr. Yoho: I object.
> "Mr. Powers: That goes to the very point.
> "The Court: 'Whether or not' would be perfectly proper. Just rephrase it.
> "By Mr. Powers:
> "Q. Could you state whether or not, Mr. King, you had any intent at that time to do anything dangerous in the operation of the automobile? A. I would have no idea of ever hurting anyone in an automobile or any other place.
> "Mr. Yoho: I object and move the answer be stricken.
> "The Court: Overruled.
> "By Mr. Powers:
> "Q. Did you at that time? A. No, sir."

The trial judge instructed the Jury, in part, as follows:

> "We are not concerned in this case with negligence,

as such, but with gross negligence. The difference between them is not merely one of degree but of the very nature of the acts and omissions and the state of mind of the party charged.

"The law uses the term gross negligence or willful and wanton misconduct. These are not two different things. One helps to define the other. To constitute gross negligence or willful and wanton misconduct there must be an affirmatively reckless state of mind together with the intent to depart from careful driving."

We have set forth below, verbatim, some typical statements, made by King's counsel during his argument to the jury, which White claims were improper and prejudicial.

"To constitute gross negligence or willful and wanton misconduct there must be an affirmatively reckless state of mind together with the intent to depart from careful driving."

\* \* \*

"Whether we like it or not, whether we agree with it or not, a guest in the care of someone else is bound by these laws and he is not entitled to recover damages from the driver of that automobile unless that driver was guilty of gross negligence or wanton, willful and wanton misconduct. And to show those things there must be an affirmatively reckless state of mind, together with the intent to depart from careful driving."

\* \* \*

"That is one of the big things against Mr. King, he didn't have the radio on and he didn't have the air conditioner on at two o'clock in the morning in Michigan when he said it was cold and he didn't want to get cold air on the other people in the car and he just had the vent cracked. Doesn't that seem a little more logical and sensible, ladies and gentlemen, than to say that added up to gross negligence and willful and wanton intent to injure somebody because he has the air conditioner off and the radio off?

"Mr. Yoho: I object as being improper argument, if the Court please.

"The Court: Overruled."

\* \* \*

"Mr. King could, of course, lie to you about it, but he told you there was certainly nothing in the world in his mind like an intent to do anybody harm. But to come under this law that is what has to exist. You have to be convinced by a preponderance of the evidence that that was in fact in his mind and of course that he lied to you when he said it wasn't. You would have to be convinced that he exhibited just an utter disregard for the safety of all the people in the car, and of course that included himself and his wife too, you know, and that his actions were so gross and so willful and so intentional that it comes within this particular law that applies to this case."

\* \* \*

"And the law says there is no right of action to recover by Mr. and Mrs. White against Mr. King unless you find that he had an *intent to do harm to these people,* that it was willful on his part, that he had an affirmatively reckless state of mind, not just a negative mind where he didn't care one way or the other, but an affirmatively reckless state of mind and an intent to do something reckless that would cause people harm. This case just doesn't add up to that, ladies and gentlemen, and I suggest that under those circumstances your verdict would have to be for the defendant." (Emphasis supplied.)

White insists that objection was made to each one of the statements above set forth but the record does not support this. The only objection we have found is the one shown above. We note, also, that a motion for a mistrial does not appear in the record. *Brinand v. Denzik,* 226 Md. 287, 173 A. 2d 203 (1961).

The decisions of the Supreme Court of Michigan seem to equate "gross negligence," as used in the statute, Mich. Stat. Ann., § 9.2101 (1960), with "an affirmatively reckless state

of mind with intent to depart from careful driving." For examples, see *Cramer v. Dye,* 328 Mich. 370, 43 N. W. 2d 892 (1950) and *Rogers v. Merritt,* 307 Mich. 459, 12 N. W. 2d 422 (1943). It will be observed that precisely the same language was used by the trial judge in his instructions to the jury and by counsel for King in his argument to the jury. But, argues White, mensuration of the negligence to determine whether it is ordinary or gross must be accomplished objectively rather than subjectively. He cites *Stevens v. Stevens,* 355 Mich. 363, 94 N. W. 2d 858, 863 (1958) where it was said:

> "In testing for the statutory standard of 'gross negligence or willful and wanton misconduct' as for the common law standard of ordinary negligence, we normally examine the external conduct of the defendant not his state of mind. As respects ordinary negligence, e.g., an intersection accident, we do not delve into the state of mind of the driver. We ask whether he has conducted himself as a reasonably prudent man under the circumstances presented. Likewise with respect to gross negligence and willful and wanton acts, * * * *His conduct is judged from what he did under the circumstances confronting him at the time."* (Emphasis supplied by White.)

We think the holding in *Stevens,* as much for what was not quoted as for what was quoted, is sound. Admittedly, the conduct of a person, and his intention or state of mind, must be judged by what he does under the circumstances prevailing at the time, regardless of what he later may declare had been in his mind at the time. But this is not to say he must not be heard to testify what he intended to do or not to do. Such a statement, of course, would be flimsy evidence, suspiciously self-serving and not at all likely to overcome any inference to be drawn from preponderant, conspicuous and significant objective evidence. Indeed the court, in *Stevens,* indicated its awareness of what we have just said. We shall restate a portion of White's quotation from *Stevens,* supplying, in italics, the language White omitted:

"\* \* \* Likewise with respect to gross negligence, and wilful and wanton acts, *which we need not on these facts distinguish, if, indeed, rational distinction is possible. Should the driver of a school bus injure his charges through passing a car at high speed on the wrong side of a blind curve we would not be too much concerned with his professed sensitivity for the welfare of his helpless charges.* His conduct is judged by what he did under the circumstances confronting him at the time."

The court, in *Stevens,* later went on to say:

"This is not to say that the mental attitude has no bearing. It may, particularly with respect to isolated acts of what would ordinarily be called 'mere' negligence (going to sleep at the wheel, driving on the wrong side of the road, etc.), be conclusive as to the gross or wanton and wilful character of the act." 94 N.W. 2d at 863.

All things considered, we are not persuaded the trial judge committed any reversible error. We think the case was fully and fairly tried and it would be most difficult to suppose, had the testimony objected to been stricken out, that the result would have been different. If, therefore, a minim of error has crept into the record it can hardly be said to be prejudicial.

*Judgment affirmed.*
*Costs to be paid by the appellants.*