887 A.2d 92

**Anthony Joseph SKIDMORE**

v.

**STATE of Maryland.**

**No. 1733, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Dec. 2, 2005.

---

Stephen R. Tully, Shirien Badawi (Seigel, Tully & Furrer, on brief), Baltimore, for appellant.

Celia Anderson Davis (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel HOLLANDER, BARBERA and MEREDITH, JJ.

MEREDITH, J.

Anthony Joseph Skidmore appeals his conviction of manslaughter by motor vehicle, Md.Code (2002), Criminal Law Art. ("C.L.") § 2–209. Skidmore contends that the evidence admitted against him at his bench trial was insufficient to

support his conviction. We disagree, and shall affirm the judgment of the Circuit Court for Harford County.

## QUESTION PRESENTED

Was the evidence sufficient to sustain a verdict of negligent manslaughter?

## BACKGROUND

On April 23, 2003, at approximately 2:30 p.m., a motor vehicle collision occurred on Route 23 in Harford County, resulting in the death of Kelsey Guckert. Skidmore's truck crossed the center line, and traveled into the oncoming traffic. Witnesses who testified at Skidmore's trial explained that they observed Skidmore's truck swerving, and then traveling into the opposite lane, at which point it hit Guckert's car head on.

Deborah Leroy, who was traveling in the same direction as Skidmore, testified that, before the accident occurred, she noticed Skidmore's truck drifting off the road. Leroy stated that she was in a vehicle ahead of Skidmore, and that she saw Skidmore's truck drift to the right onto the shoulder, and then drift back to the left.

James Rockey testified that he was traveling in the opposite direction of Skidmore when he noticed Skidmore's truck slowly swerving to the left of the center line, into the lane for oncoming traffic. Rockey testified that he pulled onto the shoulder of the road, and Skidmore's truck passed him, clipping his driver's side mirror. Both Rockey and Leroy observed Skidmore's truck hitting Guckert's vehicle head on.

The evidence at trial also included a statement Skidmore had given to the Maryland State Police on August 12, 2003. The statement was tape-recorded, and read into the record at Skidmore's trial by Maryland State Trooper Jennifer Patterson.

In his statement, Skidmore explained that he reported to work at around 7 a.m. on the date of the accident. He was working on a job at the Inner Harbor in Baltimore. Later

that morning, Skidmore was told that his crew was going to be called in for an emergency shift later that night. Skidmore dismissed his crew and went to the Rusty Scupper restaurant for lunch. Skidmore left the restaurant around noon or 12:30 p.m., and headed for home. Skidmore made the following statement to Trooper Patterson:

> Um, I headed north on Route 95, or Interstate 95, and I had gotten off on Route 24. *I was already drowsy, and I didn't feel like I should be driving.* I pulled over at the Park and Ride on Routes 24 and 95, and I took a nap, and I do not know the time, but one of my crew men had called me and asked if I had come up with any decisions yet. And I said, no, I had been sleeping. And once we had hung up with the phone call, I figured I'd make it the rest of the way home. I went down Route 24 and took the by-pass to get over to Route 23. *I had caught myself nodding off behind the wheel a few times.* So—but I figured I'd be all right. I was close to home. I was only about seven miles from the house. I hung the left on Route 23, which I kind of remember, and then after that, the next thing I remember was the actual rolling over of my vehicle. (Emphasis added.)

As noted, the trial judge found Skidmore guilty of manslaughter by motor vehicle. Skidmore was sentenced to eight years imprisonment with all but thirty days suspended. Skidmore was also sentenced to two years of supervised probation, and fined $355 in court costs.

## DISCUSSION

The standard for our review of the sufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Winder v. State,* 362 Md. 275, 325, 765 A.2d 97, 124 (2001); *see Briggs v. State,* 348 Md. 470, 475, 704 A.2d 904, 907 (1998); *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986) (citing *Jackson v. Virginia,* 443 U.S. 307,

313, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560 (1979)). As the Court of Appeals stated in *State v. Stanley,* 351 Md. 733, 720 A.2d 323 (1998):

> [O]ur concern is not whether the verdict below was in accord with the weight of the evidence, but rather, whether there was sufficient evidence at trial "that either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt."

*Id.* at 750, 720 A.2d 323 (quoting *Albrecht,* 336 Md. at 479, 649 A.2d 336).

■ Skidmore was convicted of violating C.L. § 2–209, which states in pertinent part:

> A person may not cause the death of another as a result of the person's driving, operating, or controlling a vehicle or vessel in a grossly negligent manner.

Skidmore contends that he should not have been convicted of this offense because there was insufficient evidence that he was acting in a grossly negligent manner. Skidmore argues that his falling asleep at the wheel may have constituted negligence, but it did not rise to the level of gross negligence.

The common law standard of "gross negligence" has been adopted in cases of automobile manslaughter as the minimum requirement for a conviction. *Faulcon v. State,* 211 Md. 249, 257, 126 A.2d 858 (1956); *State v. Gibson,* 4 Md.App. 236, 242–43, 242 A.2d 575 (1968). Gross negligence in this context has been defined as "a wanton or reckless disregard for human life." *State v. Kramer,* 318 Md. 576, 590, 569 A.2d 674 (1990); *see Pineta v. State,* 98 Md.App. 614, 622, 634 A.2d 982 (1993).

In *Kramer, supra,* the Court of Appeals quoted its earlier opinion of *Duren v. State,* 203 Md. 584, 592, 102 A.2d 277 (1954), and discussed the concept of gross negligence. The Court stated:

> "If there is found such lack of control, whether by reason of speed or otherwise, in a place and at a time when there is constant potentiality of injury as a result, there can be

found a wanton and reckless disregard of the rights and lives of others and so, criminal indifference to consequences."

*Kramer,* 318 Md. at 591–92, 569 A.2d 674.

Regarding the burden of proof needed to sustain a conviction for manslaughter by automobile, the Court further stated in *Kramer:*

In each case, as a matter of law, the evidence must be sufficient beyond a reasonable doubt to establish that the defendant was grossly negligent, that is, he had a wanton or reckless disregard for human life in the operation of an automobile. It deals with the state of mind of the defendant driver. Only conduct that is of extraordinary or outrageous character will be sufficient to imply this state of mind. Simple negligence will not be sufficient—even reckless driving may not be enough. Reckless driving may be a strong indication, but unless it is of extraordinary or outrageous character, it will ordinarily not be sufficient.

*Id.* at 590, 569 A.2d 674.

The main case argued by both parties, *White v. King,* 244 Md. 348, 223 A.2d 763 (1966), was a civil case that examined whether falling asleep at the wheel amounted to a *prima facie* case of gross negligence or wilful and wanton misconduct. Mr. King and three passengers were on their way to a funeral in Michigan. Mr. King, who had driven over 500 miles after working at his place of employment earlier that day, began to show signs of exhaustion. He ran off the road at one point, and later, almost drove into an overpass. Nevertheless, Mr. King ignored requests from other passengers to let them take over driving. Eventually, Mr. King fell asleep at the wheel, and caused an accident that injured all four passengers in the car.

Because the accident occurred in Michigan, the Court of Appeals analyzed the case under Michigan's guest statute, and held that these facts presented sufficient evidence for the issue of gross negligence to be submitted to the jury. The Court noted that previous Michigan cases had held that "the

driver of an automobile, overcome by sleep, is not guilty of gross negligence or wilful and wanton misconduct *unless he continues to drive in reckless disregard of premonitory symptoms.*" *White,* 244 Md. at 361, 223 A.2d 763 (citing *Wismer v. Marx,* 289 Mich. 38, 41, 286 N.W. 149 (1939)) (emphasis added). The Court of Appeals concluded that Mr. King's "insistence on continuing his driving, in view of the prior incidents, [the other passengers'] repeated requests to take the wheel, and all the other circumstances may well have been considered by a jury to constitute a reckless disregard of premonitory symptoms," *i.e.,* gross negligence. *White,* 244 Md. at 362, 223 A.2d 763.[1]

Although Skidmore attempts to distinguish *White,* arguing that Skidmore did not drive over 500 miles that day, had gotten a good night's rest, and had pulled off the road to take a nap when he realized he was too tired to drive, Skidmore's distinctions are not sufficient to persuade this Court to hold as a matter of law that it was error for the trial court to conclude Skidmore behaved in a grossly negligent manner.

In *White, supra,* 244 Md. at 362, 223 A.2d 763, the Court emphasized that Mr. King had continued to drive in reckless disregard of warning signs that he was too sleepy to continue driving. Because it is impossible to drive safely while sleeping, and driving with one's eyes closed creates a clear potential for injury to any person in the vicinity, the deliberate failure of a driver to heed clear warning signs of drowsiness is evidence of a reckless disregard for human life.

In his statement to the police, Skidmore acknowledged that when he started for home, he "was already drowsy, and didn't feel like [he] should be driving." Although he prudently

---

1. Skidmore points out that when the *White* case was remanded for a new trial, the jury returned a defense verdict which was upheld on appeal. *White v. King,* 250 Md. 192, 242 A.2d 494 (1968). The fact that the defendant ultimately persuaded the trier of fact to rule in his favor in *White v. King,* 250 Md. 192, 242 A.2d 494, is of little help to Skidmore. The Court of Appeals did not retract its holding that the facts recited above would have been sufficient for a rational trier of fact to find gross negligence on the part of Mr. King.

pulled off the highway and took a nap, when his sleep was interrupted by a phone call, Skidmore made the conscious decision to drive the additional seven miles to his home. He admitted that as he continued driving, he caught himself nodding off at the wheel "a few times." He disregarded the warning signs of his drowsiness and made a deliberate decision to continue to operate his vehicle. Unfortunately, the next thing Skidmore remembers is being involved in an accident that took the life of an innocent person. Because Skidmore continued to drive after he was aware that he had nodded off "a few times," a rational trier of fact could conclude that he continued to drive in reckless disregard of the risk to human life, and that his conduct constituted gross negligence. *See also Commonwealth v. Huggins,* 575 Pa. 395, 836 A.2d 862, 870 (2003) (court reversed the dismissal of involuntary manslaughter charges because " 'by continuing to drive after receiving the warning signs of sleep, a person does indeed consciously disregard a substantial risk of death on our highways.' . . . The risk of death posed by a sleeping driver of an automobile is obvious."); and *Conrad v. Commonwealth,* 31 Va.App. 113, 521 S.E.2d 321, 327 (1999) (court upheld conviction for involuntary manslaughter because appellant's decision to continue driving after "dozing off" four to five times was "a callous act of indifference to the safety of others").

Skidmore's admission of continuing to drive in spite of catching himself nodding off "a few times" distinguishes this case from *Plummer v. State,* 118 Md.App. 244, 702 A.2d 453 (1997), *cert. denied,* 349 Md. 104, 707 A.2d 90 (1998), a case in which we reversed a conviction for automobile manslaughter because there was insufficient evidence of gross negligence. After reviewing the facts surrounding the accident in which Plummer struck and killed a pedestrian, we concluded:

[A]ll of the evidence that we have in the case at bar is that the appellant momentarily drifted onto the shoulder of a road, up a sloped curve only approximately 3 inches in height, and unfortunately, took the life of a little girl. *The reason for the appellant's departure from the travel portion of the roadway is and forever will be unknown.* . . .

90

Nevertheless, his brief lack of attention, even though it resulted in sheer tragedy, was not of such "extraordinary or outrageous character" as to rise to the level of gross negligence capable of sustaining a conviction for automobile manslaughter.

118 Md.App. at 268–69, 702 A.2d 453 (emphasis added).

In *Plummer*, the evidence showed only that there had been an accident when the automobile drifted off of the roadway. There was no evidence at all as to why the automobile did not remain on the highway, and consequently, this Court concluded the trier of fact would have had to speculate in order to conclude that there was any grossly negligent conduct on the part of Plummer. Skidmore, on the other hand, admitted not only that he dozed off at the wheel, but also that he recognized his extreme drowsiness and made a deliberate decision to ignore the risk of falling asleep at the wheel as he continued driving. As previously noted, the evidence of such deliberate conduct was sufficient to permit a rational trier of fact to conclude that Skidmore acted in a grossly negligent manner.

Accordingly, we affirm the judgment of the circuit court.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**