REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2132

September Term, 2013

_____

YURI MARIE FRANCOIS VIELOT, JR.

v.

STATE OF MARYLAND

_____

Woodward,
Nazarian,
Reed,

JJ.

_____

Opinion by Reed, J.

_____

Filed: November 24, 2015

Appellant, Yuri Marie Francois Vielot, Jr., was tried and convicted by a jury on September 23 and 24, 2013, in the Circuit Court for Charles County of two counts of manslaughter by motor vehicle in violation of Md. Code Ann. (2011 Supp.), Criminal Law Article ("CL") § 2-209(b). The circuit court sentenced appellant to concurrent sentences of ten years with eighteen months suspended, and five years' probation. Appellant now appeals his convictions and presents the following questions for our review:

1. Did the trial court err in finding that a key State's witness, Doreen Pavese, was unavailable for purposes of admitting her former testimony pursuant to Maryland Rule 5-804(b)(1)?

2. Did the trial court err in instructing the jury that the "deliberate failure of a driver to heed clear warning signs of drowsiness is evidence of reckless disregard for human life?"

3. Was the evidence sufficient to sustain appellant's convictions?

For the reasons set forth below, we affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The first trial of this case took place on July 16, 2012, but the jury failed to return a verdict. A second trial was held on September 23, 2013. This time, the jury convicted appellant of two counts of automobile manslaughter.

Appellant worked the night shift at HH Gregg. Generally, he would leave for work at 6:00 p.m., work until 6:00 a.m. the next day, and return home at 7:00 a.m. Appellant's wife testified that he was in the habit of sleeping all day and then getting up around 6:00 p.m. to go to work.

1

On October 21, 2010, at approximately 1:10 p.m., appellant was driving his 2004 Volkswagen SUV from TGI Friday's along Maryland 228 to bring his wife lunch at her place of employment. Appellant fell asleep at the wheel, traveled off the roadway onto the median, and struck a sign and three men who were working by the side of the road. The three men were Leonel Bergama, Erick Alvarado, and Marlon Lorenzo. Alvarado and Lorenzo died from injuries caused by the accident. Berganza survived. The men, who worked as landscapers for Colossal Construction, were on the median cutting the grass and picking up garbage. It is undisputed that they were all wearing the proper safety gear.

Corporal Steven Van Bennekum, accident reconstructionist for the Maryland State Police Crash Team, testified to what happened at the accident scene. In his report, he concluded that the distance between Friday's and the scene of the accident is approximately five miles and it would take approximately seven minutes to get there driving the speed limit, which was 55 miles per hour. Corporal Van Bennekum testified that the speed analysis confirmed that appellant drove at approximately 42-50 miles per hour. He also confirmed that appellant was not under the influence of drugs or alcohol at the time of the accident. At trial, he testified that the grass at the accident scene had signs of rolling resistance marks up until the sign that appellant hit. Rolling resistance marks show that the vehicle was not braking. Corporal Van Bennekum testified that the marks changed from rolling resistance marks to skid marks after the sign. The skid marks indicate the point at which appellant started to brake.

The evidence also demonstrated that appellant told both a State Trooper and the physician's assistant at the hospital that he slept for 2 hours the night before the accident.

2

In addition, Doreen Pavese testified for the State at the first trial that appellant failed to maintain his lane for approximately one half to one mile before the accident. Although Ms. Pavese did not testify at the second trial due to injuries she sustained in an unrelated car accident, her testimony from the first trial was nevertheless admitted under the former testimony exception to the hearsay rule.

## DISCUSSION

### I. UNAVAILABILITY OF WITNESS

### A. Parties' Contentions

Appellant contends that the trial court erred in applying Md. Rule 5-804(a)(4) when it concluded that Doreen Pavese was unavailable for the purposes of admitting her former testimony. Appellant argues that the State's evidence did not establish that Ms. Pavese was unable to travel, but only that she could not drive. Appellant asserts that because Ms. Pavese was able to travel within New Jersey to physical therapy, she also could have travelled interstate. Appellant argues that "scores of witnesses, ranging from children, to the elderly, to the physically challenged, are unable to drive, yet they appear, or are made to appear, for the purposes of testifying."

Appellant agrees that the claim of unavailability is reviewed by this Court under the abuse of discretion standard, but he nevertheless asserts that the trial court erred in the "legal conclusion" that Ms. Pavese was unavailable.

Appellant also contends that because Ms. Pavese was a key witness to the State and her former testimony contained inconsistencies, he had the right to cross examine her under Md. Rule 5-804(b). Appellant points out that when State Trooper Zimmerman asked Ms.

3

Pavese at the accident scene to write down what she saw, she wrote that she observed appellant drifting into her lane and that the next thing she saw was his vehicle going onto the median, striking a sign, and then hitting two people. Appellant contends that this written statement is inconsistent with Ms. Pavese's former testimony, in which she stated that she observed appellant drifting between lanes for one half to one mile before the accident.

Lastly, appellant asserts that the claim of unavailability under Md. Rule 5-804(a)(5) is not satisfied because the State did not take any steps to procure the declarant's attendance as required by the rule.

The State responds that the trial court correctly admitted Ms. Pavese's former testimony under Md. Rule 5-804(a)(4) because her unavailability resulted from being in an unrelated car accident which impaired her arm's mobility to such an extent that she could not travel. The State provided the trial court with a note from her doctor and a disability certificate that indicated that she could not drive or work.

The State also contends that the note from Ms. Pavese's doctor, together with the disability certificate, proved that she did not willfully fail to appear in court, and therefore eliminated any need to obtain a body attachment or procure her by other legal means.

**B. Standard of Review**

Trial judges are typically afforded "broad discretion in the conduct of trials in such areas as the reception of evidence." *Void v. State*, 325 Md. 386, 393 (1992) (quoting *McCray v. State*, 305 Md. 126, 133 (1985)). Under this standard, we normally "extend the trial court great deference in determining the admissibility of evidence and will reverse

only if the court abused its discretion." *Hopkins v. State*, 352 Md. 146, 158 (1998) (citation omitted).

We apply a different standard, however, when it comes to hearsay evidence. The Court of Appeals has held that "[w]hether evidence is hearsay is an issue of law reviewed *de novo.*" *Gordon v. State*, 431 Md. 527, 536 (2013) (quoting *Bernadyn v. State*, 390 Md. 1, 8 (2005)). A trial court has "no discretion to admit hearsay in the absence of a provision providing for its admissibility." *Id.* Therefore, "[h]earsay . . . must be excluded as evidence at trial, unless it falls within an exception to the hearsay rule." *Gordon*, 431 Md. at 535 (quoting *Bernadyn*, 390 Md. at 8). Yet, when reviewing what usually is the second step of any hearsay analysis–does the hearsay fall under any of the exceptions to the hearsay rule?– we apply a *de novo* standard to the trial court's legal findings and a deferential standard to any factual findings that might be required:

> A hearsay ruling may involve several layers of analysis. Proponents of the evidence challenged on hearsay grounds usually argue (1) that the evidence at issue is not hearsay, and even if it is, (2) that it is nevertheless admissible. The first inquiry is legal in nature. But the second issue may require the trial court to make both factual and legal findings. For instance, in determining whether evidence is admissible under the excited utterance exception to the hearsay rule, . . . the trial court looks into 'the declarant's subjective state of mind' to determine whether 'under all the circumstances, [he is] still excited or upset to that degree.' It considers such factors, as, for example, how much time has passed since the event, whether the statement was spontaneous or prompted, and the nature of the statement, such as whether it was self-serving. Such factual determinations require deference from appellate courts.

*Id.* at 536-37 (citation omitted).

## C. Analysis

We hold that the trial court did not abuse its discretion in finding that Ms. Pavese was unavailable for purposes of admitting her former testimony under Md. Rule 5-804(b)(1). Before the court can admit former testimony under Md. Rule 5-804(b)(1), the court must find the declarant unavailable. Md. Rule 5-804(b) ("The following are not excluded by the hearsay rule if the declarant is unavailable as a witness"). Under Md. Rule 5-804(a)(4) and (5), a witness is unavailable when:

> (a) **Definition of Unavailability.** "Unavailability as a witness" includes situations in which the declarant:
>
> . . .
>
> (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
>
> (5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subsection (b)(2), (3), or (4) of this Rule, the declarant's attendance or testimony) by process or other reasonable means.

In a previous case involving this Rule, we noted that "[t]he prior testimony of an unavailable declarant may only be admitted if the declarant is truly unavailable. The party seeking the admission of the former testimony must demonstrate that it made a good faith effort to procure the unavailable declarant." *Alexis v. State*, 209 Md. App. 630, 665 (2013), *aff'd*, 437 Md. 457 (2014) (citation omitted); *see also Breeden v. State*, 333 Md. 212, 222 (1993). Furthermore, "[a]lthough the State bears the initial burden of showing diligence and good faith in its effort to obtain the missing witness, the trial judge's ultimate

determination that the witness is, indeed, unavailable and that the rule has therefore been satisfied is subject to review by the abuse of discretion standard." *Muhammad v. State*, 177 Md. App. 188, 298 (2007) (citation omitted).

Other jurisdictions that have reviewed the issue of admitting former testimony when the witness is unavailable for medical reasons have held that

> the judge must consider both the duration and the severity of the illness. With regard to duration, it is not essential to a finding of unavailability that the illness be permanent. The duration of the illness need only be in probability long enough so that, with proper regard to the importance of the testimony, the trial cannot be postponed.

*Burns v. Clusen*, 798 F.2d 931, 937 (7th Cir. 1986) (citing *United States v. Amaya*, 533 F.2d 188, 191 (5th Cir.1976)). When medical problems are severe and chronic and doctors do not think the declarant is able to "endure the rigors of interstate travel[,]" the court's conclusion that the declarant is unavailable is not an abuse of discretion. *United States v. McGowan*, 590 F.3d 446, 454-55 (7th Cir. 2009) (citation omitted).

Appellant's contention that the trial court could not have found Ms. Pavese unavailable without satisfying both subsections (4) and (5) of Md. Rule 5-804(a) is without merit. If the proponent of former testimony takes the position that the witness "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity," Md. Rule 5-804(a)(4), that is all that need be shown. It is not also necessary for the proponent to show that he has been unable to procure the declarant's attendance at the second trial, as subsections (4) and (5) of Rule 5-804(a), being separated by an "or," are independent. Therefore, because the issue in the present case is whether

Ms. Pavese (the declarant) was unavailable due to a then-existing physical condition, there is no need for the State to show that it sought a body attachment or any other means to procure her testimony. Ms. Pavese had been in an unrelated car accident between the first and second trials in which she suffered an injury to her rotator cuff and a torn ligament that rendered her arm immobile. As a result, she underwent shoulder surgery. The State offered her disability certificate and a doctor's note. These confirmed the injury and demonstrated that Ms. Pavese required extensive physical therapy and could not drive from New Jersey to Maryland. Because the State took the position that Ms. Pavese's shoulder injury rendered her unavailable under Rule 5-804(a)(4), whether or not it satisfied subsection (5) of that Rule is irrelevant.

While appellant argues that travelling locally within New Jersey to attend physical therapy is the same as traveling to Maryland, we are not persuaded. Similar to the court in *Burns*, the trial court reviewed the note from the doctor and the disability certificate before finding Ms. Pavese's condition sufficiently severe to restrict her travel. Therefore, the trial court did not abuse its discretion in holding that Ms. Pavese was unavailable. *See Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 642-43 (1997) (holding the trial court did not abuse its discretion in finding witness unavailable for medical reasons where the State explained that the "[out-of-state] witness had tried to give a deposition in an unrelated case but had been unable to complete the deposition due to his health problems").

Once the trial court determines that the witness is unavailable under Md. Rule 5-804(a), former testimony is admissible as a hearsay exception if the testimony was "given

8

as a witness in any action or proceeding or in a deposition taken in compliance with law in the course of any action or proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Md. Rule 5-804(b)(1). Appellant does not argue that he did not have "an opportunity and similar motive to develop [Ms. Pavese's former] testimony by direct, cross, or redirect examination,"[1] *id.*, but simply asserts that the trial court abused its discretion in finding Ms. Pavese to be unavailable under Rule 5-804(a). As we have already found that argument to be without merit, we therefore hold that the trial court did not abuse its discretion where it admitted Ms. Pavese's former testimony under Rule 5-804(b)(1).

## II. JURY INSTRUCTION

### A. Parties' Contentions

Appellant correctly contends that an appellate court should review the trial court's jury instruction under the abuse of discretion standard. Appellant argues that the present case can be distinguished from *Skidmore v. State*, 166 Md. App. 82 (2005), where the trial court generated the "deliberate failure" jury instruction, because the driver in that case admitted that he felt drowsy before driving and that he should not have gotten behind the wheel. Appellant argues that the State failed to produce any evidence to prove that he was aware of his drowsiness. Appellant contends that he only briefly swerved before falling asleep and that the fact that he fell asleep is not evidence that he felt drowsy. Thus,

---

[1] In fact, Ms. Pavese was cross-examined during appellant's first trial by the same counsel who represented appellant at his second trial.

appellant contends that the "deliberate failure" instruction should not have been read to the jury because he did not deliberately fail to heed to the clear warning signs of drowsiness.

The State contends that an appellate court should affirm judgments unless the jury instructions given were "ambiguous, misleading, or confusing to the jurors." The State argues that the appellant had clear warning signs of drowsiness prior to the accident. Specifically, the State argues that appellant told the physician's assistant in the emergency room and the State Trooper investigating the incident that he only had a couple hours of sleep before getting behind the wheel. The State also presented Ms. Pavese's testimony, in which she stated that she observed appellant failing to maintain his lane for one half to one mile before the accident occurred. Lastly, the State points to Corporal Van Bennekum's testimony about the tire tracks changing from rolling resistance marks to skid marks. Therefore, the State argues that there was certainly "some evidence" produced at trial to generate the "deliberate failure" instruction.

The State also contends that even if this Court finds that the "deliberate failure" instruction was inappropriate, then reversal of the appellant's conviction is not required because appellant suffered no harm from the instruction. The State points out that the instruction provides strong language as to what constitutes "a reckless disregard for human life," and therefore, if there was sufficient evidence to convict, the jury would not have been influenced by language from the jury instruction itself. The State contends that at most the language was "superfluous," and that the jury is entitled to be told the law in Maryland.

10

## B. Standard of Review

We review the trial court's decision refusing to offer a requested jury instruction under an abuse of discretion standard. However, a trial court must give a requested jury instruction where "(1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given." *Dickey v. State,* 404 Md. 187, 197-98 (2008); *see also* Md. Rule 4-325(c). On review, jury instructions

> must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and cover adequately the issues raised by the evidence, the defendant has not been prejudiced and reversal is inappropriate. Reversal is not required where the jury instructions, taken as a whole, sufficiently protect[ed] the defendant's rights and adequately covered the theory of the defense.

*Fleming v. State*, 373 Md. 426, 433 (2003). "Thus, while the trial court has discretion, we will reverse the decision if we find that the defendant's rights were not adequately protected." *Cost v. State*, 417 Md. 360, 369 (2010).

## C. Analysis

The issue here is whether the court's "deliberate failure" jury instruction was applicable under the facts of this case. Md. Rule 4-325 requires "that a requested instruction be given only when there is evidence in the record to support it." *Flores v. State,* 120 Md. App. 171, 193 (1998) (quoting *Hof v. State*, 337 Md. 581, 612 (1995)). A judge determines whether the evidence is sufficient by evaluating whether there exists "that minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the legal theory

11

desired." *Bazzle v. State*, 426 Md. 541, 550 (2012) (quoting *Dishman v. State,* 352 Md. 279, 292, 300 (1998)).

Here, the trial court agreed with the State that the evidence supported the "deliberate failure" instruction. Such an instruction is one that states that "the deliberate failure of a driver to heed clear warning signs of drowsiness is evidence of a reckless disregard for human life." *Skidmore*, 166 Md. App. at 88. The judge stated that "the Court is gonna give the non-patterned instruction which is a correct statement of the law." The appellant objected before the jury was instructed, and the trial court stated:

> I am going to note your continuing objection to the last sentence which reads the deliberate failure of a driver to heed clear warning signs of drowsiness is [sic] evidence of reckless disregard for human life. And that's just quoted right out of a case that the State cited. It is an accurate statement of the law so in my discretion I'm going to give that statement but I'm [sic] going to note your objection and also let you take [sic] an opportunity at the end of the instructions to also object, okay?

Thereafter, the trial court included the "deliberate failure" instruction in its instructions to the jury.

We now turn to how the "deliberate failure" instruction applies to the crime with which appellant was charged. Automobile manslaughter is an offense that occurs where the defendant causes the death of another person as a result of driving a vehicle in a grossly negligent manner. CL § 2-209(b). Simple negligence is insufficient to support a conviction for manslaughter by a vehicle. *Id.* Gross negligence is defined as "whether the conduct of the defendant, considering all the factors of the case, was such that it amounted to a wanton or reckless disregard for human life." *Montague v. State*, 3 Md. App. 66, 70 (1968) (citation

12

and internal quotation marks omitted). The Court of Appeals has explained that "the driver of an automobile, overcome by sleep, is not guilty of gross negligence or willful and wanton misconduct unless he continues to drive in reckless disregard of premonitory symptoms." *White v. King*, 244 Md. 348, 361 (1966) (quoting *Wismer v. Marx*, 289 Mich. 38, 41 (1939)).[2]

> In *White*, there were numerous warnings as to the defendant's sleepiness, such as

> > continued refusal to relinquish the wheel to [the passenger]; the long time and the substantial distance the appellee had been driving; his driving off the road a fairly short time before the accident and, later, his near collision with an overpass; the appellee's strenuous activities prior to the beginning of the journey, including his working at his employment in the morning before the trip began, and then his work on the automobile on a hot day; [and] the fact that the accident occurred on a limited access highway[.]

*White*, 244 Md. at 361. The Court of Appeals, relying on Michigan and Maryland law, held that "whether the appellee was grossly negligent was a question for the determination of the jury." *Id.* at 362.

In the present case, the defendant went to work at 6:00 p.m. the day before the accident and worked all night until 6:00 a.m. the next day. Appellant's wife testified that he would generally work all night and sleep all day; however, on the day of the accident, appellant came home at 7:00 a.m. and drove his wife's children to school in Washington, D.C. Then, at approximately 9:00 a.m., he took a nap with his wife for 2 hours. After his

---

[2] In *Skidmore*, the defendant made a statement to the police that he continued to drive when he knew that he "was already drowsy, and didn't feel like [he] should be driving . . . I had caught myself nodding off behind the wheel a few times."

nap, he drove his wife to work and went to get her lunch from TGI Friday's. The accident occurred on his way back from the restaurant. Thus, appellant had slept for only 2 hours over a 19-hour period prior to the accident.

The insignificant amount of sleep on which appellant was driving would not, however, have been sufficient evidence by itself for the jury to reasonably deduce a deliberate failure to heed clear warning signs of drowsiness. The fact alone that appellant got behind the wheel on two hours' sleep does not justify the giving of the "deliberate failure" instruction. However, that fact combined with Ms. Pavese's testimony from the first trial (which was read into evidence at the second trial) was sufficient evidence to support the giving of the instruction. Ms. Pavese recounted her observation of appellant drifting between lanes as follows:

> MS. PAVESE: I was leaving the mall, St. Charles Town Center Mall, and I was heading to Washington [D.C.] at the time. I was driving and I observed a silver SUV failing to maintain its lane. I dropped back a little bit and . . .
>
> STATE'S ATTORNEY: Now what do you mean by that, failing to maintain its lane?
>
> MS. PAVESE: I felt a little nervous about being, because he was failing to maintain his lane so I kind of, you know, stopped accelerating a little bit and dropped back because I was nervous about being near someone who was swerving. I thought maybe they were texting or something [sic] along that line.
>
> STATE'S ATTORNEY: Well, what is it you remember seeing that car do?
>
> MS. PAVESE: It was crossing over the line, coming into my lane and back and forth kind of not really maintaining a lane.

* * *

14

STATE'S ATTORNEY: Okay. All right, and about, for about how long did this happen.

MS. PAVESE: I can't be positive but I would say maybe a mile or so. A half mile to a mile of what I observed.

Ms. Pavese's testimony, combined with the testimony of appellant's wife that appellant deviated from his normal sleep schedule the day of the accident and appellant's own admissions to the physician's assistant at the hospital and the State Trooper investigating the accident that he had been driving on only a couple hours of sleep, "was sufficient for the jury to find that the [appellant] should have known that, if he continued to drive, he would . . . be overcome by sleep, and that under the circumstances, his conduct amounted to a wanton neglect of the safety of [others]." *White*, 244 Md. at 362. Therefore, the "minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the ['deliberate failure' jury instruction]," *Bazzle*, 426 Md. at 550 (quoting *Dishman,* 352 Md. at 292, 300), existed in the present case.

As we noted *supra*, "Rule 4–325(c) has been interpreted consistently as requiring the giving of a requested instruction when . . . (1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given." *Dickey,* 404 Md. at 197-98. Our analysis to this point has detailed why the "deliberate failure" jury

instruction is both a correct statement of law[3] and applicable to the facts of this case. We now turn to whether the instruction was "fairly covered elsewhere in the instructions actually given," because if not, then the trial judge was required to give it under Rule 4-325(c).

The instructions actually given by the trial court read, in relevant part:

> The Defendant is charged with the crime of manslaughter by motor vehicle.
>
> In order to convict the Defendant the State must prove that the Defendant drove a motor vehicle, that the Defendant drove in a grossly negligent manner and that this grossly negligent driving caused the death of Marlon Estuardo Chajon Lorenzo and Erick Tomas Munoz Alvarado.
>
> A driver's conduct is grossly negligent if he drives a motor vehicle in a way that creates a high degree of risk to and shows a reckless disregard for human life and the driver is aware that his driving has created that risk.
>
> In evaluating whether the State has proven that the Defendant acted in a grossly negligent manner you should consider all of the evidence and circumstances.
>
> The deliberate failure of a driver to heed clear warning signs of drowsiness is evidence of a reckless disregard for human life.

The last sentence of this instruction is the "deliberate failure" portion to which defense counsel objected. Whether appellant failed to heed to clear warning signs of drowsiness,

---

[3] In response to defense counsel's objection prior to the "deliberate failure" instruction being read, the trial court stated: "[The 'deliberate failure' instruction] is just quoted right out of a case that the State cited. It is an adequate statement of the law so in my discretion I'm going to give that statement[.]" Therefore, even in overruling the objection, the trial court was conscious of the first prong of the three-pronged test, namely that a requested instruction must be a correct statement of law.

and how that would apply to whether he acted in a grossly negligent manner, was not covered anywhere else in the instructions actually given. Accordingly, the "deliberate failure" instruction satisfies all three prongs of the test for when a trial court is required to give a requested jury instruction.

We, therefore, hold that the trial court neither abused its discretion nor committed an error of law in generating the "deliberate failure" instruction. We caution, however, that our holding in this case is not that the act of falling asleep while driving is gross negligence *per se* whenever it results in human casualty. We are mindful that it is possible for a driver of an automobile to fall asleep without experiencing, let alone deliberately failing to heed, clear warning signs of drowsiness. That said, when a trial court, based on evidence that a driver was swerving for up to a mile before driving off the road in broad daylight and fatally striking two individuals landscaping on the median, instructs the jury correctly on the law in the State of Maryland that "[t]he deliberate failure of a driver to heed clear warning signs of drowsiness is evidence of a reckless disregard for human life," it is not an abuse of discretion.

We repeat that in present case, there existed the "minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the ['deliberate failure' jury instruction]." *Bazzle*, 426 Md. at 550 (internal quotation omitted). Evidence of driving on two hours' sleep alone would not have warranted the giving of the instruction. However, the fact that appellant repeatedly left and then returned to his lane for up to a mile, combined with the fact that he had gotten little sleep, was sufficient for reasonable jurors to infer that he deliberately failed

17

to heed clear warning signs of drowsiness. Accordingly, the trial court's giving of this instruction was proper.

## III. SUFFICIENCY OF THE EVIDENCE

### A. Parties' Contentions

Appellant contends that the evidence in this case was not sufficient to support the appellant's conviction. Appellant contends that the present case is similar to *Plummer v. State*, 118 Md. App. 244 (1997). In *Plummer*, this Court reversed the defendant's conviction for automobile manslaughter, reasoning that "a rational trier of fact could [not] have found that the defendant's actions amounted to a 'wanton and willful' disregard for human safety." *Id.* at 269-70. This Court found that no evidence had been presented to show why the defendant drifted onto the shoulder of the road, taking the life of a little girl. *Id.* at 269. We stated that the defendant

> may have dozed off at the wheel; he may have been changing the radio station; he may have been reading directions; he may have spotted something across the street that caught his attention. That he should have paid 100% attention to the roadway in front of him is without question. Nevertheless, his brief lack of attention, even though it resulted in sheer tragedy, was not of such "extraordinary or outrageous character" as to rise to the level of gross negligence capable of sustaining a conviction for automobile manslaughter.

*Id.* at 269.

In *Skidmore*, this Court affirmed a conviction for automobile manslaughter where the defendant admitted to dozing off while driving and acknowledged his extreme drowsiness. *Skidmore*, 166 Md. App. 89. Appellant attempts to differentiate his case by arguing that he did not ignore signs of drowsiness and then continue to drive, conduct

18

which we held in *Skidmore* was sufficient to permit a rational trier of fact to find that the defendant had acted in a grossly negligent manner. *Id.* at 97.

The State responds by distinguishing the facts in this case from the facts in *Plummer*. The State argues that the appellant was aware that he was operating a vehicle after only two hours of sleep and continued to drive despite feeling drowsy. The State argues that appellant did not have a mere momentary of lack of attention as in *Plummer*, but rather knew he was tired from the moment he got behind the wheel. The State provides support for its arguments with similar cases in other jurisdictions.[4]

## B. Standard of Review

Our standard of review for sufficiency of the evidence is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Winder v. State*, 362 Md. 275, 325 (2001) (internal quotation marks and citations omitted). "[W]e review the evidence in the light most favorable to the prosecution and will reverse the judgment only if we find that no rational trier of fact could have found the essential elements of the crime." *Id.* As the Court of Appeals stated in *State v. Stanley,* 351 Md. 733 (1998):

> [O]ur concern is not whether the verdict below was in accord
> with the weight of the evidence, but rather, whether there was
> sufficient evidence at trial "that either showed directly, or

---

[4] *Wismer v. Marx*, 286 N.W. 149, 150 (Mich. 1939) (holding that the driver of an automobile who is overcome by sleep is not guilty of gross negligence unless he continues to drive in reckless disregard of his symptoms); *Conrad v. Commonwealth,* 521 S.E.2d 321, 326 (Va. App. 1999) (holding that a driver having knowledge of his/her dozing-off is sufficient circumstantial evidence to support both an inference that the driver's conduct would likely harm another and a finding of gross negligence).

circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt."

*Id.* at 750 (citation omitted).

## C. Analysis

Appellant was convicted under CL § 2-209, which states, in pertinent part:

(b) A person may not cause the death of another as a result of the person's driving, operating, or controlling a vehicle or vessel in a grossly negligent manner.

As previously explained, "[g]ross negligence . . . has been defined as 'a wanton or reckless disregard for human life.'" *Skidmore*, 166 Md. App. at 86 (quoting *State v. Kramer*, 318 Md. 576, 590 (1990)). In *Kramer*, the Court of Appeals stated:

If there is found such lack of control, whether by reason of speed or otherwise, in a place and at a time when there is constant potentiality of injury as a result, there can be found a wanton and reckless disregard of the rights and lives of others and so, criminal indifference to consequences.

318 Md. at 591-92 (quoting *Duren v. State*, 203 Md. 584, 592 (1954)). The Court further noted:

In each case, as a matter of law, the evidence must be sufficient beyond a reasonable doubt to establish that the defendant was grossly negligent, that is, he had a wanton or reckless disregard for human life in the operation of an automobile. It deals with the state of mind of the defendant driver. Only conduct that is of extraordinary or outrageous character will be sufficient to imply this state of mind. Simple negligence will not be sufficient-even reckless driving may not be enough. Reckless driving may be a strong indication, but unless it is of extraordinary or outrageous character, it will ordinarily not be sufficient.

*Id.* at 590.

20

In *Plummer,* "[t]here was no evidence at all as to why the automobile did not remain on the highway, and consequently, this Court concluded the trier of fact would have had to speculate in order to conclude that there was any grossly negligent conduct on the part of Plummer." *Skidmore,* 166 Md. App. at 90 (citing *Plummer,* 118 Md. App. at 268-69). In the present case, unlike in *Plummer,* there is no speculation. Appellant admitted that he only had two hours of sleep before driving and subsequently falling asleep at the wheel. He worked all night from 6:30 p.m. to 6:30 a.m. He arrived home at 7:00 a.m. the next morning, drove his wife's children to school in Washington D.C., then returned home for a two hour nap before driving his wife to work and then driving to a restaurant to get her lunch. As we noted above, however, this evidence alone would not have been enough to sustain his conviction.

Ms. Pavese's testimony was critical. She testified that she saw appellant's silver SUV swerving in and out of lanes for about one half to one mile before he hit the median and killed two people. This evidence was presented to the jury, who, as we noted above, were properly instructed that they could consider appellant's "deliberate failure . . . to heed clear warning signs of drowsiness [to be] evidence of a reckless disregard for human life." It is the jury's role–not the trial court's nor ours on appeal–to determine the facts. Ms. Pavese's testimony regarding appellant's swerving, combined with appellant's statement at the hospital that he only had two hours of sleep the night before the accident, could fairly have convinced a reasonable jury to conclude that appellant deliberately failed to heed clear warning signs of drowsiness, and, *ergo,* that he "caused the death of another as a result of

[his] driving, operating, or controlling a vehicle . . . in a grossly negligent manner." CL § 2-209(b).

Viewing the facts in the light most favorable to the State, we hold that a rational juror could have found the essential elements of automobile manslaughter beyond a reasonable doubt. We, therefore, affirm the trial court's judgments.

**JUDGMENTS OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**